1

2

3

4

5

6

7

8

9

10 **IN THE UNITED STATES DISTRICT COURT**

11 **FOR THE EASTERN DISTRICT OF CALIFORNIA**

12

13 BETTY HARMON,                                        CASE NO. CV F 08-1311 LJO GSA

14              Plaintiff,                    _____ **ORDER ON CITY DEFENDANTS' MOTION**
                                                      **TO DISMISS**
15      vs.                                           (Docs. 8, 16.)

16 CITY OF FRESNO, et al,

17              Defendants.

18 _____/

19                              **INTRODUCTION**

20        Defendants City of Fresno ("City") and several of its police officers[1] seek to dismiss Ms.

21 Harmon's federal civil rights and state tort claims as time barred and lacking necessary elements.  This

22 Court considered the City defendants' F.R.Civ.P. 12(b)(6) motion to dismiss on the record and

23 VACATES the October 23, 2008 hearing, pursuant to Local Rule 78-230(h).  For the reasons discussed

24

25        [1]       The moving defendants are the City and its police officers Lieutenant David Belluomini, Sergeant David
   Newton, Sergeant Doug Goertzen and Detective Henry Monreal (collectively the "City defendants").  This Court will refer
26 to the four City peace officers collectively as the "defendant officers."  Plaintiff Betty Harmon ("Ms. Harmon") names other
   public and private entities and individuals as defendants but they are not subject to the City defendants' F.R.Civ.P. 12
27 motions.  Defendants County of Fresno ("County"), its Department of Human Services, its Coroner's Office, Chief Deputy
   Coroner Bob Hensel, and County Sheriff's Department Detective Ryan Gilbert (collectively the "County defendants") have
28 filed their motion to dismiss which this Court addresses in its separate order.

1

1   below, this Court DISMISSES with prejudice this action against the City defendants.[2]

2   **BACKGROUND**[3]

3   **Death And Theft Of Ms. Harmon's Mother**

4   Ms. Harmon's mother Lilly Mae Harmon ("decedent") was age 85 and "of sound mind and

5   body." *Ms. Harmon was the decedent's "duly appointed conservator."* Theresa Centeno ("Ms.

6   Centeno") was the decedent's neighbor, provided decedent in-home care up to decedent's death, and was

7   paid by the County, which approved of Ms. Centeno's care of decedent.

8   *Ms. Centeno stole money from decedent, starting with cash and progressing to unauthorized*

9   *ATM withdraws from decedent's bank account.  In July 2004, decedent complained to friends and family*

10  *that the Social Security Administration was decreasing her check although Ms. Centeno withdrew half*

11  *of her Social Security checks through the ATM.  Prior to the first week of November 2004, Ms. Centeno*

12  *had withdrawn "all the money due the decedent through ATM."*

13  Ms. Centeno "systematically gave decedent small doses of Arsenic," and decedent was rushed

14  and admitted to Fresno Community Hospital on November 21, 2004.  Decedent remained in Fresno

15  Community Hospital until December 3, 2004, when she was transferred to a convalescent home.  *On*

16  *December 7, 2004, Ms. Centeno, knowing of decedent's death but without her family's knowledge,*

17  *withdrew decedent's Social Security check through the ATM.*  Decedent passed away on December 12,

18  2004.[4]

19  **Ms. Harmon's Efforts And Law Enforcement Contacts**

20  *On December 23, 2004, Ms. Harmon reviewed decedent's bank records and discovered the*

21  *December 7, 2004 ATM withdrawal although decedent, "an old fashioned lady," "never had an ATM*

22  _____

23  [2]   Based on this order to dismiss, this Court need not address the City defendants' alternative F.R.Civ.P. 12(e)

24  motion for a more definite statement or F.R.Civ.P. 12(f) motion to strike.  The City's Police Department is not a proper defendant to this action, and this action is dismissed with prejudice against it.

25  [3]   Ms. Harmon filed her complaint pro se but retained counsel after the City defendants filed their motion to

26  dismiss.  In opposition papers, Ms. Harmon's counsel includes additional facts not alleged in the complaint.  The below factual recitation will indicate such additional facts in italics.  Alleged facts derived generally from Ms. Harmon's Judicial Council of California form complaint will be noted in the normal Times Roman font.

27

28  [4]   The City defendants note that decedent's death certificate lists "congestive heart failure" as the cause of death.

1   *account." Ms. Harmon contacted the City Police Department ("Police Department") which referred*

2   *her to the County Sheriff's Department ("Sheriff's Department") because decedent's address "was*

3   *supposedly within the County of Fresno."*

4   On December 23, 2004, Ms. Harmon contacted the Police Department to report "foul play"

5   regarding decedent's death, that Ms. Centeno "had caused decedent's death by giving her small doses

6   of arsenic poison over a long period of time," and that "there was an on-going theft of decedent's funds

7   form her bank account." *Ms. Harmon requested an investigation but* was "given the run around" and

8   told to contact the Sheriff's Department. *The Sheriff's Department did a crime intake and assigned a*

9   *crime report number. Ms. Harmon was promised that "somebody will get back to her."*

10   *On December 28, 2004, after hearing from neither the Police Department nor the Sheriff's*

11   *Department, Ms. Harmon contacted both agencies. Ms. Harmon advised defendant City Police Detective*

12   *Henry Monreal ("Det. Monreal") "of the crime and her suspicions." Det. Monreal told her that "there*

13   *is nothing the police can or will do."* Ms. Harmon spoke with defendant Sheriff's Department Detective

14   Ryan Gilbert ("Det. Gilbert") about decedent's "mysterious death" and withdrawals from decedent's

15   bank account.  Det. Gilbert advised Ms. Harmon "that nothing could be done" *because the crime*

16   *occurred in the City of Fresno," outside of the jurisdiction of the Sheriff's Department.*

17   *On December 30, 2004, Ms. Harmon spoke with Sheriff's Department Sergeant Terence ("Sgt.*

18   *Terence"), and Ms. Harmon complied with his request to bring "all documentation" regarding the*

19   *"alleged crime."*

20   *On January 5, 2005, Ms. Harmon retained private investigator Jeffrey Pearce ("Mr. Pearce")*

21   *for $500 to investigate the theft from decedent's bank account.*

22   *On January 11, 2005, Ms. Harmon extracted Det. Monreal's promise "to look into the case"*

23   *and faxed at Det. Monreal's request, all information she had "on the case."*

24   *Ms. Centeno confessed to theft of decedent's monies during a January 15, 2005 interview with*

25   *Mr. Pearce.  Mr. Pearce prepared a January 19, 2005 investigative report and sent a copy to Det.*

26   *Monreal.  Ms. Harmon sent Det. Monreal a copy of Mr. Pearce's report and requested prosecution.*

27   *Det. Monreal never got back to Ms. Harmon.*

28   *On February 4, 2005, defendant  Police Department Sergeant David Newton ("Sgt. Newton")*

1    *was contacted on Ms. Harmon's behalf regarding the circumstances of decedent's death and decedent's*

2    *missing funds.  Sgt. Newton promised "something will be done."  On February 5, 2005, defendant*

3    *Police Department Sergeant Doug Goertzen ("Sgt. Goertzen") called Ms. Harmon and promised "to*

4    *do something" but Ms. Harmon never heard from him again.*

5    **Ms. Harmon's Contacts With California Department Of Justice**

6    **And Internal Affairs Complaints**

7        *On February 10, 2005, Ms. Harmon appealed to the California Department of Justice, Bureau*

8    *of Medi-Cal Fraud and Elder Abuse ("Bureau") to investigate decedent's death.  Ms. Harmon requested*

9    *decedent's exhumation for an autopsy.  The Bureau completed its investigation of theft charges in May*

10   *2005 and referred the matter to the County District Attorney's Office for prosecution.  Ms. Harmon*

11   *telephoned Assistant District Attorney Tim Donovan ("Mr. Donovan") to share her "suspicions of foul*

12   *play."*

13       *On June 23, 2005, Ms. Harmon filed an internal affairs complaint against Det. Monreal and Sgt.*

14   *Goertzen regarding their refusal to investigate.  Ms. Harmon also filed a state tort claim against the*

15   *County and City defendants.  Her claim against the City was rejected on July 26, 2005.*

16       *On September 21, 2005, Ms. Centeno plead no contest to theft of $7,000.  The Bureau closed its*

17   *case following Ms. Centeno's conviction.*

18       *On September 30, 2005, Ms. Harmon's state tort claim against the County defendants was*

19   *rejected.*

20       *On October 18, 2005, prosecutor Mr. Donovan wrote the Bureau to provide additional evidence*

21   *from Ms. Harmon regarding "her other allegations against Ms. Centeno" and to urge further*

22   *investigation.*

23       *On October 24, 2005, Ms. Harmon pleaded with the Bureau to reopen decedent's case as an*

24   *investigation into homicide and other violations.  Ms. Harmon "petitioned" the Bureau again on*

25   *November 4 and 21, 2005.*

26       *On November 11, 2005, the City notified Ms. Harmon that her internal affairs complaint against*

27   *Det. Monreal and Sgt. Goertzen was unfounded as to one and unsustained as to the other.*

28       *On December 5, 2005, the Bureau agreed to re-open decedent's case and notified defendant*

4

*County Chief Deputy Coroner Bob Hensel ("Deputy Coroner Hensel") of Ms. Harmon's request to exhume decedent for an autopsy.  On February 21, 2006, after consultation with defendant Michael Chambliss, M.D. ("Dr. Chambliss"), a decision was made to perform neither exhumation nor autopsy. The Bureau telephoned Ms. Harmon with the decision and "hence the case is considered closed."*

*On August 16, 2006, Ms. Harmon requested a written explanation why the Bureau discontinued the investigation and was furnished with the Bureau's internal memorandum.*

*In September 2006, Ms. Harmon expended $12,000 to have decedent's remains exhumed and shipped to Lincoln, Nebraska for an autopsy.*

*In March 2007, Mathias I. Okoye, M.D. ("Dr. Okoye"), the Nebraska Chief Coroner, conducted an autopsy and concluded that decedent "was murdered via acute and chronic arsenic poisoning."  Ms. Harmon forwarded the autopsy report to the Bureau and requested assistance.  Ms. Harmon faxed and mailed the autopsy report to Ben Castellanos ("Mr. Castellanos") of the County District Attorney's Office.  Mr. Castellanos notified Ms. Harmon that a determination was needed whether the Sheriff's Department or Police Department would conduct further investigation.  Ms. Harmon had not heard from Mr. Castellanos as of April 21, 2007.*

*Ms. Harmon conducted a May 2007 press conference regarding her "ordeal."  In response to the press conference, Dr. Chambliss admitted in a May 31, 2007 Fresno Bee article that decedent's body should have been exhumed and examined.  In the "aftermath" of the press conference, Mr. Castellanos telephoned Ms. Harmon that he would handle further investigation.  The Police Department informed Ms. Harmon that the Bureau would handle the case.*

*In late August 2007, the Bureau notified Ms. Harmon that the case would be closed in that its pathologist disagreed with Dr. Okoye's results.  On September 20, 2007, Ms. Harmon requested the Bureau's report which disputed Dr. Okoye's results.  On October 24, 2007, Ms. Harmon was provided the information.*

*Ms. Harmon filed a September 10, 2007 "notice of claim" with the City and County and September 28, 2007 amended claims.  The claims were denied.*

**Ms. Harmon's Claims**

On March 7, 2008, Ms. Harmon filed her complaint in the Fresno County Superior Court, and

the action was recently removed to this Court.  The complaint alleges (apparently against all named defendants):[5]

  1. A (first) negligence cause of action that defendants failed to investigate Ms. Harmon's allegations to result in "the injuries so inflicted on the decedent" and decedent's December 12, 2004 death;

  2. A (second) intentional infliction of emotional distress cause of action that defendants "intentionally and recklessly ignored" Ms. Harmon's complaints to arise to "extreme and outragious [sic]" behavior to cause Ms. Harmon emotional distress;

  3. A (third) conspiracy to interfere with civil rights cause of action under 42 U.S.C. § 1985(2) and a (fifth) reckless indifference and conspiracy to deny civil rights cause of action under 42 U.S.C. § 1983 ("section 1983") that defendants "conspired to not investigate the circumstances surrounding decedents [sic] death"; and

  4. A (fourth) wrongful death cause of action that defendants "failed to investigate plaintiff's reports" to force Ms. Harmon "to incur funds to ascertain the cause of death via an independent autopsy."

The complaint alleges that Ms. Harmon "has been deprived of a kind and loving mother, and of her care, comfort, solace and affection" and seeks "funeral expenses, burial, memorial services, costs of exhumation, and independent autopsy."

The City defendants seek to dismiss Ms. Harmon's claims as time barred and lacking essential elements.

**DISCUSSION**

**F.R.Civ.P. 12(b)(6) Motion Standards**

The initial thrust of the City defendants' F.R.Civ.P. 12(b)(6) motion is that Ms. Harmon's claims are time barred.  A limitations defense may be raised by a F.R.Civ.P. 12(b)(6) motion to dismiss. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *see Avco Corp. v. Precision Air Parts, Inc.*, 676

---

[5]  The complaint is unclear whether it alleges its five causes of action against specific defendants or all defendants.  Out an abundance of caution, this Court with construe the complaint to allege each of its five causes of action against all City defendants.

F.2d 494, 495 (11th Cir. 1982), *cert. denied*, 459 U.S. 1037, 103 S.Ct. 450 (1982).  A F.R.Civ.P. 12(b)(6) motion to dismiss may raise the limitations defense when the statute's running is apparent on the complaint's face.  *Jablon*, 614 F.2d at 682.  A motion to dismiss based on a limitations defense may be granted only if the complaint's assertions, read with required liberality, would not permit the plaintiff to prove that the statute was tolled.  *Jablon*, 614 F.2d at 682.

The City defendants further seek dismissal of Ms. Harmon's claims under F.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.  A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).  F.R.Civ.P. 12(b)(6) dismissal is proper when "plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102 (1957).

In resolving a Rule 12(b)(6) motion, the court must:  (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Farm Credit Services v. American State Bank*, 339 F.3d 765, 767 (8th Cir. 2003) (citation omitted).  A court need not permit an attempt to amend a complaint if "it determines that the pleading could not possibly be cured by allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to

1   provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a

2   formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127

3   S. Ct. 1955, 1964-65 (2007) (internal citations omitted).

4       With these standards in mind, this Court turns to the City defendants' challenges to Ms.

5   Harmon's claims.

6                           **Limitations Defense – Federal Claims**

7       The City defendants challenge as time barred the complaint's (third) conspiracy to interfere with

8   civil rights cause of action under 42 U.S.C. § 1985(2) and (fifth) reckless indifference and conspiracy

9   to deny civil rights cause of action under 42 U.S.C. 1983 (collectively "federal claims").

10      Federal civil rights statutes have no independent limitations period. *Johnson v. State of*

11  *California*, 207 F.3d 650, 653 (9th Cir. 2000); *Abreu v. Ramirez*, 284 F.Supp.2d 1250, 1257 (C.D. Cal.

12  2003). The applicable limitations period is determined by borrowing the forum state's limitations period

13  for personal injuries. *Johnson*, 207 F.3d at 653; *Taylor v. Regents of the Univ. of Cal.*, 993 F.2d 710,

14  711 (9th Cir. 1993) (California's statute of limitations for personal injury actions governs claims brought

15  pursuant to 42 U.S.C. §§ 1981, 1983, and 1985);.*Abreu*, 284 F.Supp.2d at 1257. Section 1983 and

16  related federal civil rights claims "are best characterized as personal injury actions." *Wilson v. Garcia*,

17  471 U.S. 261, 280, 105 S.Ct. 1938 (1985).

18      On January 1, 2003, California Code of Civil Procedure section 335.1 ("section 335.1")[6] took

19  effect to extend the prior limitations period for personal injury actions (and correspondingly to federal

20  civil rights claims, *see Wilson*, 471 U.S. at 271-272, 105 S.Ct. 1938; *Johnson v. Railway Express*

21  *Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716 (1975); *Krug v. Imbrodino*, 896 F.2d 395, 396-397 (9th Cir.

22  1990)) from one year under former California Code of Civil Procedure section 340(3) to two years.

23  *Abreu*, 284 F.Supp.2d at 1255; *see* Cal. Senate Bill 688 (Burton), Stats. 2002, ch. 448, §3. Applying

24  California law, claims brought under section 1983 and which arise in California are generally barred if

25  not brought within two years if they accrued after January 1, 2003. *See Johnson*, 421 U.S. 454, 95 S.Ct.

26  1716; *Elliot v. City of Union City*, 25 F.3d 800, 802 (9th Cir. 1994); *Krug*, 896 F.2d at 396-397; *see also*

27

28          [6]     Section 335.1 provides: "Within two years: An action for assault, battery, or injury to, or for the death of,
an individual caused by the wrongful act or neglect of another."

*Taylor*, 993 F.2d at 711.

Federal law "determines when a federal cause of action accrues, despite the fact that state law determines the relevant statute of limitations." *Wetzel v. Lou Ehlers Cadillac Group*, 189 F.3d 1160, 1163 (9th Cir. 1999); *Elliott*, 25 F.3d at 801-802. Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. *Tworivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999); *Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996). "Generally, the statute of limitations begins to run when a potential plaintiff knows or has reason to know of the asserted injury." *De Anza Properties X, Ltd. v. County of Santa Cruz*, 936 F.2d 1084, 1086 (9th Cir. 1991). The California Supreme Court has explained:

> Possession of "presumptive" as well as "actual" knowledge will commence the running of the statute. The applicable principle has been expressed as follows: "when the plaintiff has notice or information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to his investigation . . . the statute commences to run."

*Sanchez v. South Hoover Hospital,* 18 Cal.3d 93, 101, 132 Cal.Rptr. 657 (1976) (citations omitted).

### *Accrual*

The City defendants note that the complaint alleges a December 23, 2004 date of loss but Ms. Harmon failed to file her complaint until March 7, 2008.

The complaint's face acknowledges that the County defendants' alleged wrongs arose no later than December 23, 2004 when Ms. Harmon contacted the Fresno Police Department about the "suspicious circumstances" surrounding decedent's death and the theft from decedent's bank account. The federal claims continue to allege that the City defendants decided not to act on Ms. Harmon's allegations and conspired not to investigate. The complaint further acknowledges Ms. Harmon's need to hire an private investigator and to seek a private autopsy. The complaint reveals that no later than March 7, 2006 (two years prior to the complaint's filing), Ms. Harmon had notice or information of circumstances to put a reasonable person on inquiry of the facts underlying her federal claims, especially given the private investigator's findings as to Ms. Centeno.

### *Continuing Wrongs*

Ms. Harmon's claim of continuing wrongs, unsupported by legal authority, is unavailing. The continuing wrong doctrine involves "'repeated instances or continuing acts of the same nature, as for

instance, repeated acts of sexual harassment or repeated discriminatory employment practices.'" *Nesovic v. United States*, 71 F.3d 776, 778 (1995) (quoting *Sisseton-Wahpeton Sioux Tribe v. United States*, 895 F.2d 592, 597 (9th Cir.), *cert. denied*, 498 U.S. 824, 111 S.Ct. 75 (1990)). "The doctrine applies where there is 'no single incident' that can 'fairly or realistically be identified as the cause of significant harm.'" *Flowers v. Carville*, 310 F.3d 1118, 1126 (9th Cir. 2002) (quoting *Page v. United States*, 729 F.2d 818, 821 (D.C.Cir. 1984)). "[T]he statute of limitations runs separately from each discrete act" and "'discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges,'" *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1061 (9th Cir. 2002) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 133, 122 S.Ct. 2061 (2002) (1983 claims)); *see also Carpinteria Valley Farms, Ltd. v. County of Santa Barbara*, 344 F.3d 822, 829 (9th Cir. 2003). "[M]ere continuing impact from past violations is not actionable." *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001) (internal quotations and citation omitted) (emphasis in original); *see Richards v. CH2M Hill, Inc.*, 26 Cal.4th 798, 812, 111 Cal.Rptr.2d 87 (2001) ("the continuing violation doctrine comes into play when [a plaintiff] raises a claim based on conduct that occurred in part outside the limitations period").

Ms. Harmon appears to claim that a litany of failures to investigate beginning in 2004 and continuing up to summer 2007 are not subject to the limitations defense since the last of the failures arose within two years of filing her complaint. However, Ms. Harmon's apparent March 2007 vindication with Dr. Okoye's report does not resurrect her stale claims. In late 2004 and early 2005, the City defendants failed to investigate decedent's death and theft of her monies. Such failure started and ended more than two years before Ms. Harmon filed her action. A new or renewed claim did not arise with ensuing prompts to investigate. Neither the complaint nor Ms. Harmon's opposition papers point to facts arising after March 7, 2006 (two years before Ms. Harmon filed her complaint) to give rise to or to support the federal claims.

Moreover, Ms. Harmon appears to claim that the City defendants should have sooner investigated "her allegations of elder abuse" to avoid compromise of decedent's health although there are no facts that Ms. Harmon contacted the City defendants until after decedent's death when Ms. Harmon's December 23, 2004 review of decedent's bank account tipped her off. In other words, there can be no

1   pre-death continuing wrongs in the absence of facts which would have alerted the City defendants of a

2   need to investigate.

3   ***Equitable Tolling***

4   Apparently recognizing her stale federal claims, Ms. Harmon seeks to invoke equitable tolling.

5   Ms. Harmon argues that the County defendants' refusal to exhume and autopsy decedent's remains in

6   February 2006 "should be equitably tolled."

7   State law governs tolling of limitations periods in section 1983 actions. *Wilson*, 471 U.S. at 269,

8   105 S.Ct. 1938. Equitable tolling can "be used to stop a limitations period from continuing to run after

9   it has already begun to run." *Socop-Gonzalez v. Immigration and Naturalization Serv.*, 272 F.3d 1176,

10  1184 (2001) (internal quotations and citation omitted). Equitable tolling "'soften[s] the harsh impact

11  of technical rules which might otherwise prevent a good faith litigant from having a day in court.'"

12  *Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1137 (9th Cir. 2001) (quoting *Addison v.*

13  *State of California*, 21 Cal.3d 313, 316, 146 Cal.Rptr. 224, 578 P.2d 941 (1978)). Preventing the

14  assertion of stale claims is the principal goal of statutes of limitation, and "'general policy . . . favors

15  relieving plaintiff from the bar of a limitations statute when, possessing several legal remedies he,

16  reasonably and in good faith, pursues one designed to lessen the extent of his injuries or damage.'"

17  *Daviton*, 241 F.3d at 1137 (quoting *Addision*, 21 Cal.3d at 317). "[T]imely notice and absence of

18  prejudice to defendant and plaintiff's good faith and reasonable conduct" are the requirements that

19  control, and "tolling is appropriate where the record shows '(1) timely notice to the defendant in filing

20  the first claim; (2) lack of prejudice to defendant in gathering evidence to defend against the second

21  claim; and (3) good faith and reasonable conduct by the plaintiff in filing the second claim.'" *Daviton,*

22  241 F.3d at 1137-38 (quoting *Collier v. City of Pasadena*, 142 Cal.App.3d 917, 924, 191 Cal.Rptr. 681

23  (1983)).

24  Ms. Harmon fails to justify application of equitable tolling. Ms. Harmon appears to attempt to

25  parcel a claim from the February 21, 2006 decision to perform neither exhumation nor autopsy. The

26  problem for Ms. Harmon is untimely filing of her "first" claim, that is, a claim or claims arising from

27  Ms. Harmon's initial contacts with the City defendants. Ms. Harmon did not timely file a lawsuit after

28  the July 26, 2005 rejection of her first state tort claim. The fact that she had subsequent contact with the

1  City defendants does not resurrect any of her claims by equitable tolling especially given her knowledge

2  as early as 2005 that the City defendants would not investigate.  Ms. Harmon's reliance on her apparent

3  filing of state tort claims is unavailing.  Ms. Harmon offers nothing to revive her stale federal claims,

4  and her apparent reliance on Dr. Okoye's March 2007 autopsy results is of no consequence.

5  **Absence Of Constitutional Violation – Federal Claims**

6  The City defendants fault the federal claims for failure to allege a violation of due process or the

7  Equal Protection Clause, the only identified Constitutional provisions.

8  Section 1983 provides:

9  Every person who, under the color of [state law] . . . subjects, or causes to be subjected,
   any citizen of the United States . . . to the deprivation of any rights, privileges, or
10  immunities secured by the Constitution . . . shall be liable to the party injured in an action
   at law, suit in equity, or other proper proceedings for redress.

11

12  42 U.S.C. § 1983.

13  To state a section 1983 claim, a plaintiff must plead that: (1) defendant acted under color of state

14  law at the time the complained of act was committed; and (2) defendant deprived plaintiff of rights,

15  privileges or immunities secured by the Constitution or laws of the United States.  *Gibson v. United*

16  *States,* 781 F.2d 1334, 1338 (9th Cir. 1986).

17  "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for

18  vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807,

19  811 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 2694, n. 3 (1979)).

20  Section 1983 and other federal civil rights statutes address  liability "in favor of persons who are

21  deprived of 'rights, privileges, or immunities secured' to them by the Constitution." *Carey v. Piphus*,

22  435 U.S. 247, 253, 98 S.Ct. 1042 (1978) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S.Ct. 984,

23  996 (1976)).  "The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived

24  of a right 'secured by the Constitution and laws.'"  *Baker,* 443 U.S. at 140.

25  *Substantive Due Process*

26  "The concept of 'substantive due process,' semantically awkward as it may be, forbids the

27  government from depriving a person of life, liberty, or property in such a way that 'shocks the

28  conscience' or 'interferes with rights implicit in the concept of ordered liberty.'" *Nunez v. City of Los*

12

*Angeles*, 147 F.3d 867, 871 (9th Cir. 1998).  The substantive component of the Due Process Clause is violated by executive action only when it "can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense."  *Collins v. City of Harker Heights*, 503 U.S. 115, 128, 112 S.Ct. 1061, 1070 (1992).

"The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity."  *Albright*, 510 U.S. at 272, 114 S.Ct. at 812.[7]   The Fourteenth Amendment's due process clause "provides heightened protection against government interference with certain fundamental rights and liberty interests."  *Washington v. Glucksberg*, 521 U.S. 702, 721, 117 S.Ct. 2258 (1997).  Courts must resist the temptation to augment the substantive reach of the Fourteenth Amendment, "particularly if it requires redefining the category of rights deemed to be fundamental."  *Michael H. v. Gerald D.*, 491 U.S. 110, 109 S.Ct. 2333, 2341 (1989).

The "Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual."  *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 196, 109 S.Ct. 998 (1989).  "If the Due Process Clause does not require the State to provide its citizens with particular protective services, it follows that the State cannot be held liable under the Clause for

---

[7]    In *Armendariz v. Penman*, 75 F.3d 1311, 1318-1319 (9th Cir. 1996), the Ninth Circuit Court of Appeals noted:

However, the use of substantive due process to extend constitutional protection to economic and property rights has been largely discredited. *See generally* Gerald Gunther, Constitutional Law at 432-65 (12th ed. 1991). Rather, recent jurisprudence restricts the reach of the protections of substantive due process primarily to liberties "deeply rooted in this Nation's history and tradition." *Moore*, 431 U.S. at 503, 97 S.Ct. at 1937. Thus, the Fourteenth Amendment protects against a State's interferences with "personal decisions relating to marriage, procreation, contraception, family relationships, child rearing, and education," as well as with an individual's bodily integrity. *Planned Parenthood v. Casey*, 505 U.S. 833, 851, 112 S.Ct. 2791, 2807, 120 L.Ed.2d 674 (1992) (discussing cases); *see Loving v. Virginia*, 388 U.S. 1, 12, 87 S.Ct. 1817, 1823, 18 L.Ed.2d 1010 (1967) (marriage); *Griswold v. Connecticut*, 381 U.S. 479, 485, 85 S.Ct. 1678, 1682, 14 L.Ed.2d 510 (1965) (contraception); *Rochin v. California*, 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952) (bodily integrity); *Pierce v. Society of Sisters*, 268 U.S. 510, 534, 45 S.Ct. 571, 573, 69 L.Ed. 1070 (1925) (child rearing). These areas represent "a realm of personal liberty which the government may not enter." *See Casey*, 505 U.S. at 847, 112 S.Ct. at 2805. The cataloguing of these Fourteenth Amendment protections demonstrates that our Constitution embraces a notion of liberty encompassing more than the express provisions of the Bill of Rights.

1   injuries that could have been averted had it chosen to provide them." *DeShaney*, 489 U.S. at 196-197,

2   109 S.Ct. 998.

3        The "benefit that a third party may receive from having someone else arrested for a crime

4   generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its

5   'substantive' manifestations." *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 768 125 S.Ct.

6   2796 (2005) (for Due Process Clause purposes, wife lacked a property interest in police enforcement of

7   restraining order against her husband)*. Moreover, "the Due Process Clause is simply not implicated by

8   a negligent act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels*

9   *v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662 (1986).

10       The City defendants point to the absence of allegations that they acted under color of law to

11  deprive Ms. Harmon of constitutional or federal rights.

12       The federal claims fail to allege an actionable deprivation of life, liberty or property, and Ms.

13  Harmon's opposition papers fail to advance a due process claim.  The gist of the federal claims is that

14  defendants failed to investigate the decedent's death and bank account theft.  The federal claims fail to

15  tie such failure to a constitutional deprivation and in turn legally cognizable damage to Ms. Harmon.

16  A post-death investigation, at Ms. Harmon's request, could not have unwound the alleged cause of

17  decedent's death.  The federal claims point to nothing that shocks the conscience.  Benefits to Ms.

18  Harmon from an investigation into or prosecution of Ms. Centeno do not trigger substantive due process.

19                                   ***Equal Protection***

20  _____Mr. Harmon premises her (third) conspiracy to interfere with civil rights cause of action on

21  subsection 2 of 42 U.S.C. § 1985 ("section 1985").  The City defendants note that section 1985 creates

22  no independent cause of action and provides remedial relief "only after a violation of a specifically

23  defined and designated federal right is first established."

24       Section 1985(2) provides in pertinent part:

25       . . . if two or more persons conspire for the purpose of impeding, hindering, obstructing,
         or defeating, in any manner, the due course of justice in any State or Territory, with intent
26       to deny to any citizen the **equal protection of the laws**, or to injure him or his property
         for lawfully enforcing, or attempting to enforce, the right of any person, or class of
27       persons, to the **equal protection of the laws**;  (Bold added.)

28       Section 1985 addresses conspiracies to interfere with certain civil rights. The "equal protection"

                                            14

1  language of the second clause (state courts) of section 1985(2) requires "an allegation of class-based

2  animus for the statement of a claim under that clause." *Portman v. County of Santa Clara*, 995 F.2d

3  898, 909 (9th Cir. 1993) (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1029 (9th Cir.1985)).

4      A section 1985 claim "must allege facts to support the allegation that defendants conspired

5  together. A mere allegation of conspiracy without factual specificity is insufficient." *Karim-Panahi v.*

6  *Los Angeles Police Dept.*, 839 F.2d 621, 626 (9th Cir. 1988).  A conspiracy occurs only when the parties

7  have reached "a unity of purpose or a common design and understanding, or a meeting of minds in an

8  unlawful arrangement." *American Tobacco Co. v. United States*, 328 U.S. 781, 809-10, 66 S.Ct. 1125,

9  1138, 90 L.Ed. 1575 (1946).  "[T]o effectuate the intent of Congress, the conspirators must be motivated

10  by a class-based, invidiously discriminatory animus." *Western Telecasters, Inc. v. California Federation*

11  *of Labor, AFL-CIO*, 415 F.Supp. 30, 33 (S.D. Cal. 1976).

12      A civil rights plaintiff alleging an equal protection violation must prove: (1) defendants treated

13  him/her differently from others similarly situated; (2) the unequal treatment was based on an

14  impermissible classification; (3) the defendants acted with discriminatory intent in applying this

15  classification; and (4) plaintiff suffered injury as a result of the discriminatory classification. *Moua v.*

16  *City of Chico*, 324 F.Supp.2d 1132, 1137 (E.D. Cal. 2004); *see Van Pool v. City and County of San*

17  *Francisco*, 752 F.Supp. 915, 927 (N.D.Cal.1990) (section 1983 plaintiff must prove purposeful

18  discrimination by demonstrating that he "receiv[ed] different treatment from that received by others

19  similarly situated," and that the treatment complained of was under color of state law).  Equal protection

20  claims may be brought by a "'class of one,' where the plaintiff alleges that she has been intentionally

21  treated differently from others similarly situated and that there is no rational basis for the difference in

22  treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000).

23      The complaint fails to allege sufficient section 1985(2) and equal protection claims.  The

24  complaint lacks allegations of class-based animus, unequal treatment, absence of rational basis and

25  resulting injury as well as facts that the City defendants conspired together.  The federal claims merely

26  allege a conspiracy, nothing more.

27      Perhaps recognizing as much, Ms. Harmon in her opposition papers points to several California

28  statutes "criminalizing elder abuse" and notes that "the City defendants promised the Plaintiff that they

1   will investigate her allegations of elder abuse which they never did." Ms. Harmon fails to demonstrate

2   how the California elder abuse statutes translate or apply to an equal protection claim. The "enhanced

3   remedies provided under the [California Elder Abuse] Act were intended to apply to actions by or on

4   behalf of victims of elder or dependent care abuse. The legislative history does not reveal any intent to

5   apply the Act to a wrongful death action brought by a decedent's heir on his or her own behalf." *Quiroz*

6   *v. Seventh Ave. Center,* 140 Cal.App.4th 1256, 1282-1283, 45 Cal.Rptr.3d 222 (2006). Decedent, not

7   Ms. Harmon, was the intended beneficiary of elder abuse laws. Ms. Harmon demonstrates no equal

8   protection claim arising after decedent's death, the point at which Ms. Harmon's alleged claims arose.

9   Ms. Harmon's federal claims fail, and Ms. Harmon offers nothing to demonstrate that amendment could

10  cure the claims' significant deficiencies.

11                                  **The City's Liability – Federal Claims**

12          The City faults the federal claims for failure to allege sufficient facts for a *Monell* claim against

13  it.

14          A local government unit may not be held liable under a section 1983 claim for the acts of its

15  employees under a respondeat superior theory. *Monell v. Dept. of Soc. Sevrs. of New York City*, 436

16  U.S. 658, 691, 98 S.Ct. 2018 (1978); *Davis v. Mason County*, 927 F.2d 1473, 1480 (9th Cir.), *cert.*

17  *denied*, 502 U.S. 899, 112 S.Ct. 275 (1991); *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th

18  Cir. 1989). "[A] municipality cannot be held liable *solely* because it employs a tortfeasor." *Monell*, 436

19  U.S. at 691, 98 S.Ct. at 2018. The local government unit "itself must cause the constitutional

20  deprivation." *Gilette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992), *cert. denied*, 510 U.S. 932, 114

21  S.Ct. 345 (1993). Because liability of a local governmental unit must rest on its actions, not the actions

22  of its employees, a plaintiff must go beyond the respondeat superior theory and demonstrate that the

23  alleged constitutional violation was the product of a policy or custom of the local governmental unit.

24  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197 (1989); *Pembaur v. City of*

25  *Cincinnati*, 475 U.S. 469, 478-480, 106 S.Ct. 1292 (1986). To maintain a section 1983 claim against

26  a local government, a plaintiff must establish the requisite culpability (a "policy or custom" attributable

27  to municipal policymakers) and the requisite causation (the policy or custom as the "moving force"

28  behind the constitutional deprivation). *Monell*, 436 U.S. at 691-694, 98 S.Ct. 2018; *Gable v. City of*

1    *Chicago*, 296 F.3d 531, 537 (7ᵗʰ Cir. 2002).

2        The City correctly notes the complaint's absence of allegations that the City committed wrongs

3    pursuant to a custom or policy.  The federal claims fail even to suggest that the City caused a

4    constitutional deprivation.  Ms. Harmon's unsubstantiated claims of ability to plead a policy, custom or

5    practice are insufficient.  If Ms. Harmon was sincere about pursuing federal claims, including a claim

6    against the City, she could have easily filed a first amended complaint rather than relying on non-existent

7    allegations of her complaint.  *See* F.R.Civ.P. 15(a)(1).

8                                    **State Tort Claim Requirements**

9        The complaint alleges California tort claims of negligence, intentional infliction of emotional

10   distress and wrongful death (collectively "state tort claims").  The City defendants note that as to the

11   state tort claims, Ms. Harmon failed to comply with  requirements of what is commonly referred to as

12   the California Tort Claims Act, Gov. Code, §§ 810, et. seq.

13       The California government claims statutes require timely filing of a proper claim as condition

14   precedent to maintenance of an action.  Cal. Gov. Code, §§ 905, 911.2, 945.4 (presentment of a written

15   claim to the applicable public entity is required before a "suit for money or damages may be brought

16   against a public entity")⁸; *County of San Luis Obispo v. Ranchita Cattle Co.*, 16 Cal.App.3d 383, 390,

17   94 Cal.Rptr. 73 (1971).  The claims procedures applicable to actions against public employees are the

18   same for actions against public entities.  Cal. Gov. Code, §§ 950-950.6.  Compliance with the claims

19   statutes is mandatory. *Farrell v. County of Placer*, 23 Cal.2d 624, 630, 145 P.2d 570 (1944).  Failure

20   to file a claim is fatal to the cause of action.  *Johnson v. City of Oakland*, 188 Cal.App.2d 181, 183, 10

21   Cal.Rptr. 409 (1961). "[F]ailure to allege facts demonstrating or excusing compliance with the claim

22   presentation requirement subjects a claim against a public entity to a demurrer for failure to state a cause

23   of action." *State v. Superior Court*, 32 Cal.4th 1234, 13 Cal.Rptr.3d 534, 538 (2004).

24       The complaint fails to allege that Ms. Harmon complied with the California government claims

25   statutes to permit her to proceed here with her state tort claims.  The City defendants note that Ms.

26   _____

27       ⁸      California Government Code section 911.2(a) provides: "A claim relating to a cause of action for death
     or for injury to person . . . shall be presented . . . not later than six months after the accrual of the cause of action.  A claim
28   relating to any other cause of action shall be presented . . . not later than one year after the accrual of the cause of action."

1   Harmon failed to file timely a claim with the City.  Such failure is fatal to her state tort claims.  There

2   is no direct evidence that Ms. Harmon filed a state tort claim or filed her action timely following

3   rejection of her state tort claim.  An unsubstantiated state tort claim bolsters dismissal of Ms. Harmon's

4   state tort claims.

5                    **City's Direct Tort Liability**

6          The City contends that the state tort claims fail to allege a necessary statutory basis for the City's

7   direct tort liability.

8          The California Tort Claims Act, Cal. Gov. Code, §§ 810, et. seq., does not provide that a public

9   entity is liable for its own conduct or omission to the same extent as a private person or entity.  *Zelig v.*

10  *County of Los Angeles*, 27 Cal.4th 1112, 1128, 119 Cal.Rptr.2d 709, 722 (2002).   California

11  Government Code section 815(a) provides that a "public entity is not liable for an injury, whether such

12  injury arises out of an act or omission of the public entity or a public employee or any other person,"

13  "[e]xcept as otherwise provided by statute."  Certain statutes provide expressly for public entity liability

14  in circumstances that are somewhat parallel to the potential liability of private individuals and entities,

15  but the Tort Claims Act's intent "is not to expand the rights of plaintiffs in suits against governmental

16  entities, but to confine potential governmental liability to rigidly delineated circumstances." *Brown v.*

17  *Poway Unified School Dist.*, 4 Cal.4th 820, 829, 15 Cal.Rptr.2d 679 (1993).

18         A court first determines whether a statute "imposes direct liability" on a defendant public entity.

19  *Munoz v. City of Union City*, 120 Cal.App.4th 1077, 1111, 16 Cal.Rptr.3d 521, 547 (2004).  "[D]irect

20  tort liability of public entities must be based on a specific statute declaring them to be liable, or at least

21  creating some specific duty of care, and not on the general tort provisions of [California] Civil Code

22  section 1714."  *Eastburn v. Regional Fire Protection Authority*, 31 Cal.4th 1175, 1183, 80 P.3d 656

23  (2003).  "[B]ecause under the Tort Claims Act all governmental tort liability is based on statute, the

24  general rule that statutory causes of action must be pleaded with particularity is applicable."  *Lopez v.*

25  *So. Cal. Rapid Transit Dist.*, 40 Cal.3d 780, 795, 221 Cal.Rptr. 840 (1985).  Thus, "to state a cause of

26  action against a public entity, every fact material to the existence of its statutory liability must be pleaded

27  with particularity." *Peter W. v. San Francisco Unified Sch. Dist.,* 60 Cal.App.3d 814, 819,131 Cal.Rptr.

28  854 (1960)*.*

18

1   The complaint fails to allege a statutory basis to pin the City for liability for negligence and

2   wrongful death.  The complaint refers to no statute which creates a specific duty for the City.  Ms.

3   Harmon's reliance on portions of the California Elder Abuse Act are unavailing given that Ms. Harmon

4   was not a direct victim.  As a reminder, the "enhanced remedies provided under the [California Elder

5   Abuse] Act were intended to apply to actions by or on behalf of victims of elder or dependent care abuse.

6   The legislative history does not reveal any intent to apply the Act to a wrongful death action brought by

7   a decedent's heir on his or her own behalf." *Quiroz,* 140 Cal.App.4th at 1282-1283, 45 Cal.Rptr.3d 222.

8   Moreover, the City defendants correctly note that since the Bureau headed the investigation regarding

9   decedent's bank account, the City defendants' further assistance would have been "unproductive" unless

10   the Bureau requested assistance.  Ms. Harmon fails meaningfully to demonstrate grounds to impose

11   liability on the City.

12   **Breach Of Duty**

13   The City defendants argue that Ms. Harmon's negligence claim fails in the absence of a breach

14   of a cognizable legal duty.  Ms. Harmon points to California elder abuse statutes to impose a "duty to

15   investigate the allegations of adult abuse."

16   The elements of negligence are (a) a legal duty to use due care; (b) a breach of such legal duty;

17   and (c) the breach as the proximate or legal cause of the resulting injury.  *Ladd v. County of San Mateo*,

18   12 Cal.4th 913, 917, 50 Cal.Rptr.2d 309 (1996).  "Liability for negligent conduct may only be imposed

19   where there is a duty of care owed by the defendant to the plaintiff or to a class of which the plaintiff is

20   a member." *J'Aire Corp. v. Gregory,* 24 Cal.3d 799, 803, 157 Cal.Rptr. 407 (1979).  A duty to the

21   plaintiff is an essential element, which "may be imposed by law, be assumed by the defendant, or exist

22   by virtue of a special relationship." *Potter v. Firestone Tire & Rubber Co.,* 6 Cal.4th 965, 985, 25

23   Cal.Rptr.2d 550 (1993).

24   "As a rule, one has no duty to come to the aid of another. A person who has not created a peril

25   is not liable in tort merely for failure to take affirmative action to assist or protect another unless there

26   is some relationship between them which gives rise to a duty to act." *Williams v. State of California*,

27   34 Cal.3d 18, 23, 192 Cal.Rptr. 233 (1983).  A police officer does not assume a greater obligation to

28   others individually and his/her additional duty is limited to that "owed to the public at large." *See*

*Williams*, 34 Cal.3d 18, 24, n. 3, 192 Cal.Rptr. 233; *see Lugtu v. California Highway Patrol*, 26 Cal. 4th 703, 717, 110 Cal.Rptr.2d 528 (2001) ("law enforcement officers, like other members of the public, generally do not have a legal duty to come to the aid of a person").

Moreover, "[a]bsent a special relationship creating a special duty, the police have no legal duty" to engage in specific conduct toward a general member of the public. *See Adams v. City of Fremont*, 68 Cal.App.4th 243, 279, 80 Cal.Rptr.2d 196 (1998); *see also Tarasoff v. Regents of University of California*, 17 Cal.3d 425, 436, 131 Cal.Rptr. 14 (1976)*.

The complaint lacks factual allegations that the City defendants owed a duty to Ms. Harmon or had a special relationship with her to subject them to negligence liability.  As noted by the City defendants, the complaint fails to allege that the City defendants represented to Ms. Harmon "that they would investigate either the missing funds or the cause of Decedent's death."  Ms. Harmon attempts to create a duty and in turn negligence liability were none exists.  Moreover, based on the complaint and Ms. Harmon's additional facts, the City defendants were first notified of alleged elder abuse after decedent passed to vitiate any claim that they could have acted to avoid compromise of decedent's health.

### **Wrongful Death Claim**

The City defendants fault the (fourth) wrongful death cause of action for failure to allege facts that Ms. Harmon is entitled to bring the claim as decedent's sole heir or that the City defendants caused decedent's death.

Under California Code of Civil Procedure section 377.60(a), a wrongful death action may be pursued by a decedent's personal representative, surviving spouse or children, or if there are no surviving issue, by a person entitled to inherit from decedent by intestate succession.  The elements of a Code of Civil Procedure section 377.60 wrongful death action are (1) a "wrongful act or neglect" on the part of one or more persons that (2) "cause[s]" (3) the "death of [another] person."  Cal. Code Civ. Proc., § 377.60; *Nogart v. Upjohn*, 21 Cal.4th 383, 390, 87 Cal.Rptr.2d 453 (1999).  "A wrongful death action has a statutory rather than common law origin; the Legislature both created and limited the remedy." *Ruttenberg v. Ruttenberg*, 53 Cal.App.4th 801, 807, 62 Cal.Rptr.2d 78 (1997).

The City defendants are correct that the complaint fails to allege Ms. Harmon's standing to

1   pursue the wrongful death claim. Ms. Harmon's opposition papers claim that Ms. Harmon is decedent's

2   sole heir and conservator.  Nonetheless, the wrongful death claim alleges no wrongdoing of the City

3   defendants to cause decedent's death in that the alleged wrongdoing arose after decedent's death.

4   Moreover, the complaint targets Ms. Centeno as the cause of decedent's death.  The wrongful death

5   claim fails.

6   **Intentional Infliction Of Emotional Distress Claim**

7   The City defendants fault the (second) intentional infliction of emotional distress cause of action

8   for failure to allege "extreme and outrageous" conduct to impose liability.

9   The elements of a cause of action for intentional infliction of emotional distress are: (1)

10   defendant's outrageous conduct; (2) defendant's intention to cause, or reckless disregard of the

11   probability of causing, emotional distress; (3) plaintiff's suffering severe or extreme emotional distress;

12   and (4) an actual and proximate causal link between the tortious (outrageous) conduct and the emotional

13   distress. *Nally v. Grace Community Church of the Valley*, 47 Cal.3d 278, 300, 253 Cal.Rptr. 97, 110

14   (1988), *cert. denied*, 490 U.S. 1007, 109 S.Ct. 1644 (1989)*;Cole v. Fair Oaks Fire Protection Dist.*, 43

15   Cal.3d 148, 155, n. 7, 233 Cal.Rptr. 308 (1987).  The "[c]onduct to be outrageous must be so extreme

16   as to exceed all bounds of that usually tolerated in a civilized community." *Davidson v. City of*

17   *Westminister*, 32 Cal.3d 197, 209, 185 Cal.Rptr. 252 (1982) (quoting *Cervantez v. J.C. Penney Co.*, 24

18   Cal.3d 579, 593, 156 Cal.Rptr.198 (1979)).  Conduct is extreme and outrageous when it is of a nature

19   which is especially calculated to cause, and does cause, mental distress.  Liability does not extend to

20   mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. *Fisher v. San Pedro*

21   *Peninsula Hosp.*, 214 Cal.App.3d 590, 617, 262 Cal.Rptr. 842, 857 (1989).

22   To support an intentional infliction of emotional distress claim, the conduct must be more than

23   "intentional and outrageous. It must be conduct directed at the plaintiff, or occur in the presence of a

24   plaintiff of whom the defendant is aware." *Christensen v. Superior Court*, 54 Cal.3d at 903, 2

25   Cal.Rptr.2d 79 (1991).  The California Supreme Court has further explained:

26   "The law limits claims of intentional infliction of emotional distress to egregious conduct
toward plaintiff proximately caused by defendant." . . . The only exception to this rule

27   is that recognized when the defendant is aware, but acts with reckless disregard, of the
plaintiff and the probability that his or her conduct will cause severe emotional distress

28   to that plaintiff. . . . Where reckless disregard of the plaintiff's interests is the theory of

recovery, the presence of the plaintiff at the time the outrageous conduct occurs is recognized as the element establishing a higher degree of culpability which, in turn, justifies recovery of greater damages by a broader group of plaintiffs than allowed on a negligent infliction of emotional distress theory. . . .

*Christensen*, 54 Cal.3d at 905-906, 2 Cal.Rptr.2d 79 (citations omitted.)

The complaint fails to allege outrageous conduct to support an intentional infliction of emotional distress claim. At best, the complaint alleges hints of nonfeasance (failure to investigate) – not conduct calculated to cause emotional distress. The (second) intentional infliction of emotional distress cause of action fails in the absence of alleged facts to support elements of the claim.[9] Ms. Harmon offers nothing to attempt to revive her intentional infliction of emotional distress claim.

### Defendant Officers' Discretionary Immunity

The defendant officers contend that they are immune to the state tort claims under California Government Code section 820.2, which provides generally that "a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." The defendant officers note their decisions whether: (1) crimes had occurred within the City's jurisdiction; (2) there was sufficient corroborating evidence of theft and homicide crimes; and (3) Ms. Centeno was linked to crimes as a witness or suspect. The immunity of Government Code section 820.2 further supports dismissal of the state tort claims against the defendant officers.

### CONCLUSION AND ORDER

As discussed above, the complaint is riddled with deficiencies which cannot be overcome by an attempt at amendment. On its face, the complaint reflects that its claims are time barred and lacks facts to satisfy the limitations period. The complaint lacks facts and related allegations to meet elements of its claims. As such, this Court DISMISSES with prejudice this action against defendants City of Fresno, Lieutenant David Belluomini, Sergeant David Newton, Sergeant Doug Goertzen and Detective Henry

---

[9]       The City further points to immunity under California Government Code section 815.2(b), which provides generally that "a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." The City is not liable for intentional infliction of emotional distress given that the defendant officers likewise are not.

Monreal.  This Court DIRECTS the clerk to enter judgment against plaintiff Betty Harmon and in favor of defendants City of Fresno, Lieutenant David Belluomini, Sergeant David Newton, Sergeant Doug Goertzen and Detective Henry Monreal.

IT IS SO ORDERED.

**Dated:**   **October 20, 2008**                    /s/ **Lawrence J. O'Neill**
                                                            UNITED STATES DISTRICT JUDGE