1

2

3

4

5

6

7

8

9

10                     **IN THE UNITED STATES DISTRICT COURT**

11                   **FOR THE EASTERN DISTRICT OF CALIFORNIA**

12

13    BETTY HARMON,                              CASE NO. CV F 08-1311 LJO GSA

14                        Plaintiff,          **ORDER ON COUNTY DEFENDANTS'**
                                              **MOTION TO DISMISS**
15         vs.                                (Docs. 7, 17.)

16    CITY OF FRESNO, et al,

17                        Defendants.
                                          /
18

19                               **INTRODUCTION**

20          Defendants County of Fresno ("County") and couple of its agencies and employees[1] seek to

21    dismiss Ms. Harmon's federal civil rights and state tort claims as time barred and lacking necessary

22    elements. Ms. Harmon responds that her complaint is sufficient and provides sufficient notice of her

23    claims.  This Court considered the County defendants' F.R.Civ.P. 12(b)(6) motion to dismiss on the

24    record and VACATES the October 23, 2008 hearing, pursuant to Local Rule 78-230(h).  For the reasons

25    _____

26         [1]        The moving defendants are the County, its Department of Human Services, its Coroner's Office, Chief
      Deputy Coroner Bob Hensel, and County Sheriff's Department Detective Ryan Gilbert (collectively the "County
27    defendants.")  Plaintiff Betty Harmon ("Ms. Harmon") names other public and private entities and individuals as defendants
      but they are not subject to the County defendants' F.R.Civ.P. 12 motions.  Defendants City of Fresno ("City") and its peace
28    officers Lieutenant David Belluomini, Sergeant David Newton, Sergeant Doug Goertzen and Detective Henry Monreal
      (collectively the "City defendants") have filed their motion to dismiss which this Court addresses in a separate order.

                                                1

1  discussed below, this Court DISMISSES with prejudice this action against the County defendants.[2]

2  **BACKGROUND**[3]

3  **Death And Theft Of Ms. Harmon's Mother**

4  Ms. Harmon's mother Lilly Mae Harmon ("decedent") was age 85 and "of sound mind and body"

5  prior to her death. *Ms. Harmon was the decedent's "duly appointed conservator."*  Defendant Theresa

6  Centeno ("Ms. Centeno") was the decedent's neighbor, provided decedent in-home care during January

7  2001 to decedent's death, and was paid by the County, which approved of Ms. Centeno's care of

8  decedent.

9  *Ms. Centeno stole money from decedent, starting with cash and progressing to unauthorized*

10  *ATM withdraws from decedent's bank account.  In July 2004, decedent complained to friends and family*

11  *that the Social Security Administration was decreasing her check although Ms. Centeno withdrew half*

12  *of her Social Security checks through the ATM.  Prior to the first week of November 2004, Ms. Centeno*

13  *had withdrawn "all the money due the decedent through ATM."*

14  Ms. Centeno "systematically gave decedent small doses of Arsenic," and decedent was rushed

15  and admitted to Fresno Community Hospital on November 21, 2004.  Decedent remained in Fresno

16  Community Hospital until December 3, 2004, when she was transferred to a convalescent home.  *On*

17  *December 7, 2004, Ms. Centeno, knowing of decedent's death but without her family's knowledge,*

18  *withdrew decedent's Social Security check through the ATM.*  Decedent passed away on December 12,

19  2004.

20  **Ms. Harmon's Efforts And Law Enforcement Contacts**

21  *On December 23, 2004, Ms. Harmon reviewed decedent's bank records and discovered the*

22  *December 7, 2004 ATM withdrawal although decedent, "an old fashioned lady," "never had an ATM*

23  *account."  Ms. Harmon contacted the City Police Department ("Police Department") which referred*

24  

---

25  [2]  Based on this order to dismiss, this Court need not address the County defendants' alternative F.R.Civ.P.
26  12(e) motion for a more definite statement.

27  [3]  Ms. Harmon filed her complaint pro se but retained counsel after the County defendants filed their motion
to dismiss.  In opposition papers, Ms. Harmon's counsel includes additional facts not alleged in the complaint.  The below
28  factual recitation will indicate such additional facts in italics.  Alleged facts derived generally from Ms. Harmon's Judicial
Council of California form complaint will be noted in the normal Times Roman font.

*her to the County Sheriff's Department ("Sheriff's Department") because decedent's address "was*

*supposedly within the County of Fresno."*

On December 23, 2004, Ms. Harmon contacted the Sheriff's Department to report "foul play" regarding decedent's death, that Ms. Centeno "had caused decedent's death by giving her small doses of arsenic poison over a long period of time," and that "there was an on-going theft of decedent's funds form her bank account." *Ms. Harmon requested an investigation but* was "given the run around." *The Sheriff's Department did a crime intake and assigned a crime report number. Ms. Harmon was promised that "somebody will get back to her."*

*On December 28, 2004, after hearing from neither the Police Department nor the Sheriff's Department, Ms. Harmon contacted both agencies. Ms. Harmon advised defendant Police Department Detective Henry Monreal ("Det. Monreal") "of the crime and her suspicions." Det. Monreal told her that "there is nothing the police can or will do."* Ms. Harmon spoke with defendant Sheriff's Department Detective Ryan Gilbert ("Det. Gilbert") about decedent's "mysterious death" and withdrawals from decedent's bank account. Det. Gilbert advised Ms. Harmon "that nothing could be done" *because the crime occurred in the City of Fresno," outside of the jurisdiction of the Sheriff's Department.*

*On December 30, 2004, Ms. Harmon spoke with Sheriff's Department Sergeant Terence ("Sgt. Terence"), and Ms. Harmon complied with his request to bring "all documentation" regarding the "alleged crime."*

*On January 5, 2005, Ms. Harmon retained private investigator Jeffrey Pearce ("Mr. Pearce") for $500 to investigate the theft from decedent's bank account.*

*On January 11, 2005, Ms. Harmon extracted Det. Monreal's promise "to look into the case" and faxed at Det. Monreal's request, all information she had "on the case."*

*Ms. Centeno confessed to theft of decedent's monies during a January 15, 2005 interview with Mr. Pearce. Mr. Pearce prepared a January 19, 2005 investigative report and sent a copy to Det. Monreal. Ms. Harmon sent Det. Monreal a copy of Mr. Pearce's report and requested prosecution. Det. Monreal never got back to Ms. Harmon.*

*On February 4, 2005, defendant Police Department Sergeant David Newton ("Sgt. Newton")*

1    *was contacted on Ms. Harmon's behalf regarding the circumstances of decedent's death and decedent's*

2    *missing funds. Sgt. Newton promised "something will be done." On February 5, 2005, defendant*

3    *Police Department Sergeant Doug Goertzen ("Sgt. Goertzen") called Ms. Harmon and promised "to*

4    *do something" but Ms. Harmon never heard from him again.*

5                    **Ms. Harmon's Contacts With California Department Of Justice**

6                                 **And Internal Affairs Complaints**

7           *On February 10, 2005, Ms. Harmon appealed to the California Department of Justice, Bureau*

8    *of Medi-Cal Fraud and Elder Abuse ("Bureau") to investigate decedent's death. Ms. Harmon requested*

9    *decedent's exhumation for an autopsy. The Bureau completed its investigation of theft charges in May*

10   *2005 and referred the matter to the Fresno County District Attorney's Office for prosecution. Ms.*

11   *Harmon telephoned Assistant District Attorney Tim Donovan ("Mr. Donovan") to share her "suspicions*

12   *of foul play."*

13          *On June 23, 2005, Ms. Harmon filed an internal affairs complaint against Det. Monreal and Sgt.*

14   *Goertzen regarding their refusal to investigate. Ms. Harmon also filed a state tort claim against the*

15   *County and City defendants. Her claim against the City was rejected on July 26, 2005.*

16          *On September 21, 2005, Ms. Centeno plead no contest to theft of $7,000. The Bureau closed its*

17   *case following Ms. Centeno's conviction.*

18          *On September 30, 2005, Ms. Harmon's state tort claim against the County defendants was*

19   *rejected.*

20          *On October 18, 2005, prosecutor Mr. Donovan wrote the Bureau to provide additional evidence*

21   *from Ms. Harmon regarding "her other allegations against Ms. Centeno" and to urge further*

22   *investigation.*

23          *On October 24, 2005, Ms. Harmon pleaded with the Bureau to reopen decedent's case as an*

24   *investigation into homicide and other violations. Ms. Harmon "petitioned" the Bureau again on*

25   *November 4 and 21, 2005.*

26          *On November 11, 2005, the City notified Ms. Harmon that her internal affairs complaint against*

27   *Det. Monreal and Sgt. Goertzen was unfounded as to one and unsustained as to the other.*

28          *On December 5, 2005, the Bureau agreed to re-open decedent's case and notified defendant*

*County Chief Deputy Coroner Bob Hensel ("Deputy Coroner Hensel") of Ms. Harmon's request to exhume decedent for an autopsy.  On February 21, 2006, after consultation with defendant Michael Chambliss, M.D. ("Dr. Chambliss"), a decision was made to perform neither exhumation nor autopsy. The Bureau telephoned Ms. Harmon with the decision and "hence the case is considered closed."*

*On August 16, 2006, Ms. Harmon requested a written explanation why the Bureau discontinued the investigation and was furnished with the Bureau's internal memorandum.*

*In September 2006, Ms. Harmon expended $12,000 to have decedent's remains exhumed and shipped to Lincoln, Nebraska for an autopsy.*

*In March 2007, Mathias I. Okoye, M.D. ("Dr. Okoye"), the Nebraska Chief Coroner, conducted an autopsy and concluded that decedent "was murdered via acute and chronic arsenic poisoning." Ms. Harmon forwarded the autopsy report to the Bureau and requested assistance.  Ms. Harmon faxed and mailed the autopsy report to Ben Castellanos ("Mr. Castellanos") of the County District Attorney's Office.  Mr. Castellanos notified Ms. Harmon that a determination was needed whether the Sheriff's Department or Police Department would conduct further investigation.  Ms. Harmon had not heard from Mr. Castellanos as of April 21, 2007.*

*Ms. Harmon conducted a May 2007 press conference regarding her "ordeal."  In response to the press conference, Dr. Chambliss admitted in a May 31, 2007 Fresno Bee article that decedent's body should have been exhumed and examined.  In the "aftermath" of the press conference, Mr. Castellanos telephoned Ms. Harmon that he would handle further investigation.  The Police Department informed Ms. Harmon that the Bureau would handle the case.*

*In late August 2007, the Bureau notified Ms. Harmon that the case would be closed in that its pathologist disagreed with Dr. Okoye's results.  On September 20, 2007, Ms. Harmon requested the Bureau's report which disputed Dr. Okoye's results.  On October 24, 2007, Ms. Harmon was provided the information.*

*Ms. Harmon filed a September 10, 2007 "notice of claim" with the City and County and September 28, 2007 amended claims.  The claims were denied.*

**Ms. Harmon's Claims**

On March 7, 2008, Ms. Harmon filed her complaint in the Fresno County Superior Court, and

5

1   the County defendants recently removed the action to this Court.  The complaint alleges (apparently

2   against all named defendants):[4]

3      1.   A (first) negligence cause of action that defendants failed to investigate Ms. Harmon's

4           allegations to result in "the injuries so inflicted on the decedent" and decedent's

5           December 12, 2004 death;

6      2.   A (second) intentional infliction of emotional distress cause of action that defendants

7           "intentionally and recklessly ignored" Ms. Harmon's complaints to arise to "extreme and

8           outragious [sic]" behavior to cause Ms. Harmon emotional distress;

9      3.   A (third) conspiracy to interfere with civil rights cause of action under 42 U.S.C. §

10          1985(2) and a (fifth) reckless indifference and conspiracy to deny civil rights cause of

11          action under 42 U.S.C. § 1983 ("section 1983") that defendants "conspired to not

12          investigate the circumstances surrounding decedents [sic] death"; and

13     4.   A (fourth) wrongful death cause of action that defendants "failed to investigate plaintiff's

14          reports" to force Ms. Harmon "to incur funds to ascertain the cause of death via an

15          independent autopsy."

16      The complaint alleges that Ms. Harmon "has been deprived of a kind and loving mother, and of

17   her care, comfort, solace and affection" and seeks "funeral expenses, burial, memorial services, costs

18   of exhumation, and independent autopsy."

19      The County defendants seek to dismiss Ms. Harmon's claims as time barred and lacking essential

20   elements.

21                                   **DISCUSSION**

22                   **F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards**

23      The initial thrust of the County defendants' F.R.Civ.P. 12(b)(6) motion is that Ms. Harmon's

24   claims are time barred.  A limitations defense may be raised by a F.R.Civ.P. 12(b)(6) motion to dismiss.

25   *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *see Avco Corp. v. Precision Air Parts,*

26   _____

27      [4]      The complaint is unclear whether it alleges its five causes of action against specific defendants or all
    defendants.  Out an abundance of caution, this Court with construe the complaint to allege each of its five causes of action
28   against all County defendants.

                                        6

*Inc.*, 676 F.2d 494, 495 (11ᵗʰ Cir. 1982), *cert. denied*, 459 U.S. 1037, 103 S.Ct. 450 (1982).  A F.R.Civ.P. 12(b)(6) motion to dismiss may raise the limitations defense when the statute's running is apparent on the complaint's face. *Jablon*, 614 F.2d at 682.  A motion to dismiss based on a limitations defense may be granted only if the complaint's assertions, read with required liberality, would not permit the plaintiff to prove that the statute was tolled. *Jablon*, 614 F.2d at 682.

        The County defendants further seek dismissal of Ms. Harmon's claims under F.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.  A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9ᵗʰ Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9ᵗʰ Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7ᵗʰ Cir. 1995).  F.R.Civ.P. 12(b)(6) dismissal is proper when "plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102 (1957).

        In resolving a F.R.Civ.P. 12(b)(6) motion, the court must:  (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Farm Credit Services v. American State Bank*, 339 F.3d 765, 767 (8ᵗʰ Cir. 2003) (citation omitted).  A court need not permit an attempt to amend a complaint if "it determines that the pleading could not possibly be cured by allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9ᵗʰ Cir. 1990).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to

7

1    provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a

2    formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127

3    S. Ct. 1955, 1964-65 (2007) (internal citations omitted).

4         With these standards in mind, this Court turns to the County defendants' challenges to Ms.

5    Harmon's claims.

6                              **Limitations Defense – Federal Claims**

7         The County defendants challenge as time barred the complaint's (third) conspiracy to interfere

8    with civil rights cause of action under 42 U.S.C. § 1985(2) and (fifth) reckless indifference and

9    conspiracy to deny civil rights cause of action under 42 U.S.C. 1983 (collectively "federal claims").

10        Federal civil rights statutes have no independent limitations period. *Johnson v. State of*

11   *California*, 207 F.3d 650, 653 (9th Cir. 2000); *Taylor v. Regents of the Univ. of Cal.*, 993 F.2d 710, 711

12   (9th Cir. 1993) (California's statute of limitations for personal injury actions governs claims brought

13   pursuant to 42 U.S.C. §§ 1981, 1983, and 1985)*; Abreu v. Ramirez*, 284 F.Supp.2d 1250, 1257 (C.D.

14   Cal. 2003).  The applicable limitations period is determined by borrowing the forum state's limitations

15   period for personal injuries. *Johnson*, 207 F.3d at 653; *Abreu*, 284 F.Supp.2d at 1257.  Section 1983

16   and related federal civil rights claims "are best characterized as personal injury actions." *Wilson v.*

17   *Garcia*, 471 U.S. 261, 280, 105 S.Ct. 1938 (1985).

18        On January 1, 2003, California Code of Civil Procedure section 335.1 ("section 335.1")[5] took

19   effect to extend the prior limitations period for personal injury actions (and correspondingly to federal

20   civil rights claims, *see Wilson*, 471 U.S. at 271-272, 105 S.Ct. 1938; *Johnson v. Railway Express*

21   *Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716 (1975); *Krug v. Imbrodino*, 896 F.2d 395, 396-397 (9th Cir.

22   1990)) from one year under former California Code of Civil Procedure section 340(3) to two years.

23   *Abreu*, 284 F.Supp.2d at 1255; *see* Cal. Senate Bill 688 (Burton), Stats. 2002, ch. 448, §3. Applying

24   California law, claims brought under section 1983 and which arise in California are generally barred if

25   not brought within two years if they accrued after January 1, 2003. *See Johnson*, 421 U.S. 454, 95 S.Ct.

26   1716; *Elliot v. City of Union City*, 25 F.3d 800, 802 (9th Cir. 1994); *Krug*, 896 F.2d at 396-397; *see also*

27

28        [5]    Section 335.1 provides: "Within two years: An action for assault, battery, or injury to, or for the death of,
     an individual caused by the wrongful act or neglect of another."

                                              8

1   *Taylor*, 993 F.2d at 711.

2          Federal law "determines when a federal cause of action accrues, despite the fact that state law

3   determines the relevant statute of limitations." *Wetzel v. Lou Ehlers Cadillac Group*, 189 F.3d 1160,

4   1163 (9th Cir. 1999); *Elliott*, 25 F.3d at 801-802.  Under federal law, a claim accrues when the plaintiff

5   knows or has reason to know of the injury which is the basis of the action. *Tworivers v. Lewis*, 174 F.3d

6   987, 991 (9th Cir. 1999); *Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996).  "Generally, the statute of

7   limitations begins to run when a potential plaintiff knows or has reason to know of the asserted injury."

8   *De Anza Properties X, Ltd. v. County of Santa Cruz*, 936 F.2d 1084, 1086 (9th Cir. 1991).  The California

9   Supreme Court has explained:

10          Possession of "presumptive" as well as "actual" knowledge will commence the running
            of the statute. The applicable principle has been expressed as follows: "when the plaintiff
11          has notice or information of circumstances to put a reasonable person on inquiry, or has
            the opportunity to obtain knowledge from sources open to his investigation . . . the
12          statute commences to run."

13   *Sanchez v. South Hoover Hospital,* 18 Cal.3d 93, 101, 132 Cal.Rptr. 657 (1976) (citations omitted).

14                                                      ***Accrual***

15          The County defendants argue that Ms. Harmon "had knowledge of the facts giving rise to the

16   complaint in 2004-2005" when she "complained to the police agencies" and requested an investigation.

17   As such, the County defendants conclude the federal claims are time barred.  Ms. Harmon responds that

18   "her claims against the County defendants is [sic] still viable based on the doctrine of continuing

19   violation."   Ms. Harmon contends that the County defendants were obliged to investigate her

20   "allegations of elder abuse" and that their wrongs continued up to the summer of 2007.

21          The complaint's face acknowledges that the County defendants' alleged wrongs arose no later

22   than December 23, 2004 when Ms. Harmon contacted the Sheriff's Department about the "suspicious

23   circumstances" surrounding decedent's death and the theft from decedent's bank account.  The federal

24   claims continue to allege that the County defendants decided not to act on Ms. Harmon's allegations and

25   conspired not to investigate.  The complaint further acknowledges Ms. Harmon's need to hire a private

26   investigator and to seek a private autopsy.  The complaint reveals that no later than March 7, 2006 (two

27   years prior to the complaint's filing), Ms. Harmon had notice or information of circumstances to put a

28   reasonable person on inquiry of the facts underlying her federal claims, especially given the private

1  investigator's findings as to Ms. Centeno.

2                              *Continuing Wrongs*

3        Ms. Harmon's claim of continuing wrongs, unsupported by legal authority, is unavailing. The

4  continuing wrong doctrine involves "'repeated instances or continuing acts of the same nature, as for

5  instance, repeated acts of sexual harassment or repeated discriminatory employment practices.'" *Nesovic*

6  *v. United States*, 71 F.3d 776, 778 (1995) (quoting *Sisseton-Wahpeton Sioux Tribe v. United States*, 895

7  F.2d 592, 597 (9th Cir.), *cert. denied*, 498 U.S. 824, 111 S.Ct. 75 (1990)). "The doctrine applies where

8  there is 'no single incident' that can 'fairly or realistically be identified as the cause of significant

9  harm.'" *Flowers v. Carville*, 310 F.3d 1118, 1126 (9th Cir. 2002) (quoting *Page v. United States*, 729

10  F.2d 818, 821 (D.C.Cir. 1984)). "[T]he statute of limitations runs separately from each discrete act" and

11  "'discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged

12  in timely filed charges,'" *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1061 (9th Cir. 2002)

13  (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 133, 122 S.Ct. 2061 (2002) (1983

14  claims)); *see also Carpinteria Valley Farms, Ltd. v. County of Santa Barbara*, 344 F.3d 822, 829 (9th

15  Cir. 2003). "[M]ere continuing impact from past violations is not actionable." *Knox v. Davis*, 260 F.3d

16  1009, 1013 (9th Cir. 2001) (internal quotations and citation omitted) (emphasis in original); *see Richards*

17  *v. CH2M Hill, Inc.*, 26 Cal.4th 798, 812, 111 Cal.Rptr.2d 87 (2001) ("the continuing violation doctrine

18  comes into play when [a plaintiff] raises a claim based on conduct that occurred in part outside the

19  limitations period").

20        Ms. Harmon appears to claim that a litany of failures to investigate beginning in 2004 and

21  continuing up to summer 2007 are not subject to the limitations defense since the last of the failures

22  arose within two years of filing her complaint. However, Ms. Harmon's apparent March 2007

23  vindication with Dr. Okoye's report does not resurrect her stale claims. In late 2004 and early 2005, the

24  County defendants failed to investigate decedent's death and theft of her monies. Such failure started

25  and ended more than two years before Ms. Harmon filed her action. A new or renewed claim did not

26  arise with ensuing prompts to investigate. Neither the complaint nor Ms. Harmon's opposition papers

27  point to facts arising after March 7, 2006 (two years before Ms. Harmon filed her complaint) to give rise

28  to or to support the federal claims. The County defendants properly note the lack of application of the

                                      10

1  continuing wrong doctrine.

2      Moreover, Ms. Harmon appears to claim that the County defendants should have sooner

3  investigated "her allegations of elder abuse" to avoid compromise of decedent's health although there

4  are no facts that Ms. Harmon contacted the County defendants until after decedent's death when Ms.

5  Harmon's December 23, 2004 review of decedent's bank account tipped her off.  In other words, there

6  can be no pre-death continuing wrongs in the absence of facts which would have alerted the County

7  defendants of a need to investigate.

8                          ***Equitable Tolling***

9      Apparently recognizing her stale federal claims, Ms. Harmon seeks to invoke equitable tolling.

10 Ms. Harmon argues that the County defendants' refusal to exhume and autopsy decedent's remains in

11 February 2006 "should be equitably tolled."

12     State law governs tolling of limitations periods in section 1983 actions.  *Wilson*, 471 U.S. at 269,

13 105 S.Ct. 1938.  Equitable tolling can "be used to stop a limitations period from continuing to run after

14 it has already begun to run."  *Socop-Gonzalez v. Immigration and Naturalization Serv.*, 272 F.3d 1176,

15 1184 (2001) (internal quotations and citation omitted).  Equitable tolling "'soften[s] the harsh impact

16 of technical rules which might otherwise prevent a good faith litigant from having a day in court.'"

17 *Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1137 (9th Cir. 2001) (quoting *Addison v.*

18 *State of California*, 21 Cal.3d 313, 316, 146 Cal.Rptr. 224, 578 P.2d 941 (1978)).  Preventing the

19 assertion of stale claims is the principal goal of statutes of limitation, and "'general policy . . . favors

20 relieving plaintiff from the bar of a limitations statute when, possessing several legal remedies he,

21 reasonably and in good faith, pursues one designed to lessen the extent of his injuries or damage.'"

22 *Daviton*, 241 F.3d at 1137 (quoting *Addison*, 21 Cal.3d at 317).  "[T]imely notice and absence of

23 prejudice to defendant and plaintiff's good faith and reasonable conduct" are the requirements that

24 control, and "tolling is appropriate where the record shows '(1) timely notice to the defendant in filing

25 the first claim; (2) lack of prejudice to defendant in gathering evidence to defend against the second

26 claim; and (3) good faith and reasonable conduct by the plaintiff in filing the second claim.'"  *Daviton,*

27 241 F.3d at 1137-38 (quoting *Collier v. City of Pasadena*, 142 Cal.App.3d 917, 924, 191 Cal.Rptr. 681

28 (1983)).

1   Ms. Harmon fails to justify application of equitable tolling.  Ms. Harmon appears to attempt to

2   parcel a claim from the February 21, 2006 decision to perform neither exhumation nor autopsy.  The

3   problem for Ms. Harmon is untimely filing of her "first" claim, that is, a claim or claims arising from

4   Ms. Harmon's initial contacts with the County defendants.  Ms. Harmon did not timely file a lawsuit

5   after the July 26, 2005 rejection of her first state tort claim.  The fact that she had subsequent contact

6   with the County defendants does not resurrect any of her claims by equitable tolling.  Ms. Harmon's

7   reliance on her apparent filing of state tort claims is unavailing.  Ms. Harmon offers nothing to revive

8   her stale federal claims, and her apparent reliance on Dr. Okoye's March 2007 autopsy results is of no

9   consequence.

10  **Standing – Federal Claims**

11  The County defendants challenge the federal claims for failure to allege a claim on Ms. Harmon's

12  behalf and injury "fairly traceable" to the County defendants.

13  "It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper

14  party to invoke judicial resolution of the dispute and exercise of the court's remedial powers." *Warth*

15  *v. Seldin*, 430 U.S. 490, 518, 95 S.Ct. 2197 (1975).  To invoke standing, a plaintiff must allege "(a) a

16  particularized injury (b) concretely and demonstrably resulting from defendant's action (c) which injury

17  will be redressed by the remedies sought." *Bowker v. Morton*, 541 F.2d 1347, 1349 (9th Cir. 1976).

18  Generally, "the issue of standing involves two inquiries: first, whether the proponent of a particular legal

19  right has alleged 'injury in fact,' and, second, whether the proponent is asserting his own legal rights and

20  interests rather than basing his claim for relief upon the rights of third parties. *Rakas v. Illinois,* 439 U.S.

21  128, 139, 99 S.Ct. 421 (1978).

22  The federal claims allege that defendants violated Ms. Harmon's "constitutional/civil rights . .

23  . by denying her access to the courts."  Ms. Harmon fails to articulate how or why Ms. Harmon was

24  entitled to access to the courts and how the County defendants denied such access to injure Ms. Harmon.

25  The federal claims allege that Ms. Harmon informed the Sheriff's Department about decedent's

26  "suspicious" death and theft from her bank account but "[d]efendants conspired to not investigate the

27  circumstances surrounding decedents [sic] death."  The federal claims fail to identify a legally

28  cognizable injury arising from an alleged conspiracy and failure to investigate.

1    Ms. Harmon appears to attribute her injury to exhumation and autopsy costs.  However, Ms.

2    Harmon fails to explain how such injury is recoverable under her federal claims.  Ms. Harmon's resort

3    to a private right of action under California Welfare and Institutions Code § 15657 is unclear and

4    unexplained and in turn unavailable given that she was not a direct victim of elder abuse.[6]  This Court

5    will not endeavor to create Ms. Harmon's arguments for her.  The County defendants correctly note that

6    alleged failure to investigate is not a source of elder abuse which arose prior to the County defendants'

7    knowledge of alleged wrongs.   In absence of allegations of particularized injury and assertion of Ms.

8    Harmon's legal rights, the federal claims fail to demonstrate Ms. Harmon's standing.

9    **Absence Of Constitutional Violation – Federal Claims**

10   The County defendants fault the federal claims for failure to allege a violation of due process or

11   the Equal Protection Clause, the only identified Constitutional provisions.  "Section 1983 'is not itself

12   a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere

13   conferred.'"  *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 811 (1994) (quoting *Baker v.*

14   *McCollan*, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 2694, n. 3 (1979)).  Section 1983 and other federal

15   civil rights statutes address  liability "in favor of persons who are deprived of 'rights, privileges, or

16   immunities secured' to them by the Constitution." *Carey v. Piphus*, 435 U.S. 247, 253, 98 S.Ct. 1042

17   (1978) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S.Ct. 984, 996 (1976)).  "The first inquiry

18   in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the

19   Constitution and laws.'"  *Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689 (1979).

20   ***Substantive Due Process***

21   "The concept of 'substantive due process,' semantically awkward as it may be, forbids the

22   government from depriving a person of life, liberty, or property in such a way that 'shocks the

23   conscience' or 'interferes with rights implicit in the concept of ordered liberty.'" *Nunez v. City of Los*

24   *Angeles*, 147 F.3d 867, 871 (9th Cir. 1998).  The substantive component of the Due Process Clause is

25

26           [6]    The "enhanced remedies provided under the [California Elder Abuse] Act were intended to apply to actions
     by or on behalf of victims of elder or dependent care abuse. The legislative history does not reveal any intent to apply the
27   Act to a wrongful death action brought by a decedent's heir on his or her own behalf." *Quiroz v. Seventh Ave. Center,* 140
     Cal.App.4th 1256, 1282-1283, 45 Cal.Rptr.3d 222 (2006).

28

violated by executive action only when it "can properly be characterized as arbitrary, or conscience

shocking, in a constitutional sense." *Collins v. City of Harker Heights*, 503 U.S. 115, 128, 112 S.Ct.

1061, 1070 (1992).

"The protections of substantive due process have for the most part been accorded to matters

relating to marriage, family, procreation, and the right to bodily integrity." *Albright*, 510 U.S. at 272,

114 S.Ct. at 812.[7]   The Fourteenth Amendment's due process clause "provides heightened protection

against government interference with certain fundamental rights and liberty interests." *Washington v.*

*Glucksberg*, 521 U.S. 702, 721, 117 S.Ct. 2258 (1997).  Courts must resist the temptation to augment

the substantive reach of the Fourteenth Amendment, "particularly if it requires redefining the category

of rights deemed to be fundamental." *Michael H. v. Gerald D.*, 491 U.S. 110, 109 S.Ct. 2333, 2341

(1989).

The "Due Process Clauses generally confer no affirmative right to governmental aid, even where

such aid may be necessary to secure life, liberty, or property interests of which the government itself may

not deprive the individual." *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189,

196, 109 S.Ct. 998 (1989).  "If the Due Process Clause does not require the State to provide its citizens

with particular protective services, it follows that the State cannot be held liable under the Clause for

injuries that could have been averted had it chosen to provide them." *DeShaney*, 489 U.S. at 196-197,

---

[7]    In *Armendariz v. Penman*, 75 F.3d 1311, 1318-1319 (9th Cir. 1996), the Ninth Circuit Court of Appeals has noted:

> However, the use of substantive due process to extend constitutional protection to economic and property rights has been largely discredited. *See generally* Gerald Gunther, Constitutional Law at 432-65 (12th ed. 1991). Rather, recent jurisprudence restricts the reach of the protections of substantive due process primarily to liberties "deeply rooted in this Nation's history and tradition." *Moore*, 431 U.S. at 503, 97 S.Ct. at 1937. Thus, the Fourteenth Amendment protects against a State's interferences with "personal decisions relating to marriage, procreation, contraception, family relationships, child rearing, and education," as well as with an individual's bodily integrity. *Planned Parenthood v. Casey*, 505 U.S. 833, 851, 112 S.Ct. 2791, 2807, 120 L.Ed.2d 674 (1992) (discussing cases); *see Loving v. Virginia*, 388 U.S. 1, 12, 87 S.Ct. 1817, 1823, 18 L.Ed.2d 1010 (1967) (marriage); *Griswold v. Connecticut*, 381 U.S. 479, 485, 85 S.Ct. 1678, 1682, 14 L.Ed.2d 510 (1965) (contraception); *Rochin v. California*, 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952) (bodily integrity); *Pierce v. Society of Sisters*, 268 U.S. 510, 534, 45 S.Ct. 571, 573, 69 L.Ed. 1070 (1925) (child rearing). These areas represent "a realm of personal liberty which the government may not enter." See *Casey*, 505 U.S. at 847, 112 S.Ct. at 2805. The cataloguing of these Fourteenth Amendment protections demonstrates that our Constitution embraces a notion of liberty encompassing more than the express provisions of the Bill of Rights.

1    109 S.Ct. 998.

2        The "benefit that a third party may receive from having someone else arrested for a crime

3    generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its

4    'substantive' manifestations." *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 768 125 S.Ct.

5    2796 (2005) (for Due Process Clause purposes, wife lacked a property interest in police enforcement of

6    restraining order against her husband). Moreover, "the Due Process Clause is simply not implicated by

7    a negligent act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels*

8    *v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662 (1986).

9        The County defendants point to an absence of authority that Ms. Harmon "has a due process right

10   to have the cause of her mother's death investigated by a police agency." The County defendants argue

11   that there was no interference with right to familial association in that decedent had died prior to Ms.

12   Harmon's investigation requests. The County defendants note the lack of allegations that Ms. Harmon

13   was denied court access in the absence of a constitutional right to prosecute another. The County

14   defendants conclude that their allege nonfeasance falls far short to the "conscience shocking" standard.

15       The federal claims fail to allege an actionable deprivation of life, liberty or property, and Ms.

16   Harmon's opposition papers fail to advance a due process claim. The gist of the federal claims is that

17   defendants failed to investigate decedent's death and bank account theft. The federal claims fail to tie

18   such failure to a constitutional deprivation and in turn legally cognizable damage to Ms. Harmon. A

19   post-death investigation, at Ms. Harmon's request, could not have unwound the alleged cause of

20   decedent's death. The federal claims point to nothing that shocks the conscience. Benefits to Ms.

21   Harmon from an investigation into or prosecution of Ms. Centeno do not trigger substantive due process.

22                              ***Equal Protection***

23       The complaint premises Ms. Harmon's (third) conspiracy to interfere with civil rights cause of

24   action on subsection 2 of 42 U.S.C. § 1985 ("section 1985"). Section 1985(2) provides in pertinent part:

25       . . . if two or more persons conspire for the purpose of impeding, hindering, obstructing,
         or defeating, in any manner, the due course of justice in any State or Territory, with intent
26       to deny to any citizen the **equal protection of the laws**, or to injure him or his property
         for lawfully enforcing, or attempting to enforce, the right of any person, or class of
27       persons, to the **equal protection of the laws**;  (Bold added.)

28       Section 1985 addresses conspiracies to interfere with certain civil rights. The "equal protection"

                                          15

1  language of the second clause (state courts) of section 1985(2) requires "an allegation of class-based

2  animus for the statement of a claim under that clause." *Portman v. County of Santa Clara*, 995 F.2d

3  898, 909 (9th Cir. 1993) (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1029 (9th Cir.1985)).

4        A section 1985 claim "must allege facts to support the allegation that defendants conspired

5  together. A mere allegation of conspiracy without factual specificity is insufficient." *Karim-Panahi v.*

6  *Los Angeles Police Dept.*, 839 F.2d 621, 626 (9th Cir. 1988). A conspiracy occurs only when the parties

7  have reached "a unity of purpose or a common design and understanding, or a meeting of minds in an

8  unlawful arrangement." *American Tobacco Co. v. United States*, 328 U.S. 781, 809-10, 66 S.Ct. 1125,

9  1138, 90 L.Ed. 1575 (1946). "[T]o effectuate the intent of Congress, the conspirators must be motivated

10 by a class-based, invidiously discriminatory animus." *Western Telecasters, Inc. v. California Federation*

11 *of Labor, AFL-CIO*, 415 F.Supp. 30, 33 (S.D. Cal. 1976).

12       A civil rights plaintiff alleging an equal protection violation must prove: (1) defendants treated

13 him/her differently from others similarly situated; (2) the unequal treatment was based on an

14 impermissible classification; (3) the defendants acted with discriminatory intent in applying this

15 classification; and (4) plaintiff suffered injury as a result of the discriminatory classification. *Moua v.*

16 *City of Chico*, 324 F.Supp.2d 1132, 1137 (E.D. Cal. 2004); *see Van Pool v. City and County of San*

17 *Francisco*, 752 F.Supp. 915, 927 (N.D.Cal.1990) (section 1983 plaintiff must prove purposeful

18 discrimination by demonstrating that he "receiv[ed] different treatment from that received by others

19 similarly situated," and that the treatment complained of was under color of state law). Equal protection

20 claims may be brought by a "'class of one,' where the plaintiff alleges that she has been intentionally

21 treated differently from others similarly situated and that there is no rational basis for the difference in

22 treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000).

23       The complaint fails to allege sufficient section 1985(2) and equal protection claims. The

24 complaint lacks allegations of class-based animus, unequal treatment, absence of rational basis and

25 resulting injury as well as facts that the County defendants conspired together. The federal claims

26 merely allege a conspiracy, nothing more.

27       Perhaps recognizing as much, Ms. Harmon in her opposition papers points to several California

28 statutes "criminalizing elder abuse" and argues she "is entitled to equal protection of the law, especially

1   giver her individual right to a civil claim." As she did with her standing claim, Ms. Harmon fails to

2   demonstrate application of California Welfare and Institutions Code § 15657 to equal protection.

3   Decedent, not Ms. Harmon, was the intended beneficiary of elder abuse laws. Ms. Harmon demonstrates

4   no equal protection claim arising after decedent's death, the point at which Ms. Harmon's alleged claims

5   arose. Ms. Harmon's federal claims fail, and Ms. Harmon offers nothing to demonstrate that amendment

6   could cure the claims' significant deficiencies.

7                              **The County's Liability – Federal Claims**

8           The County faults the federal claims for failure to allege sufficient facts for a *Monell* claim

9   against it.

10          A local government unit may not be held liable under a section 1983 claim for the acts of its

11  employees under a respondeat superior theory. *Monell v. Dept. of Soc. Servs. of New York City*, 436

12  U.S. 658, 691, 98 S.Ct. 2018 (1978); *Davis v. Mason County*, 927 F.2d 1473, 1480 (9th Cir.), *cert.*

13  *denied*, 502 U.S. 899, 112 S.Ct. 275 (1991); *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th

14  Cir. 1989). "[A] municipality cannot be held liable *solely* because it employs a tortfeasor." *Monell*, 436

15  U.S. at 691, 98 S.Ct. at 2018. The local government unit "itself must cause the constitutional

16  deprivation." *Gilette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992), *cert. denied*, 510 U.S. 932, 114

17  S.Ct. 345 (1993). Because liability of a local governmental unit must rest on its actions, not the actions

18  of its employees, a plaintiff must go beyond the respondeat superior theory and demonstrate that the

19  alleged constitutional violation was the product of a policy or custom of the local governmental unit.

20  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197 (1989); *Pembaur v. City of*

21  *Cincinnati*, 475 U.S. 469, 478-480, 106 S.Ct. 1292 (1986). To maintain a section 1983 claim against

22  a local government, a plaintiff must establish the requisite culpability (a "policy or custom" attributable

23  to municipal policymakers) and the requisite causation (the policy or custom as the "moving force"

24  behind the constitutional deprivation). *Monell*, 436 U.S. at 691-694, 98 S.Ct. 2018; *Gable v. City of*

25  *Chicago*, 296 F.3d 531, 537 (7th Cir. 2002).

26          The County correctly notes the complaint's absence of allegations that the County committed

27  wrongs pursuant to a custom or policy. The federal claims fail even to suggest that the County caused

28  a constitutional deprivation. The passing reference to "ratification" in the Ms. Harmon's opposition

                                          17

papers fails to support a claim against the County.  If Ms. Harmon was sincere about pursuing federal claims, including a claim against the County, she could have easily filed a first amended complaint rather than relying on non-existent allegations of her complaint.  *See* F.R.Civ.P. 15(a)(1).

### Limitations Defense – State Tort Claims

The complaint alleges California tort claims of negligence, intentional infliction of emotional distress and wrongful death (collectively "state tort claims").  In a footnote, the County defendants argue that the same limitations defense arguments for the federal claims apply to the state tort claims.  The County defendants appear to rely on the two-year limitations period of section 335.1.  As with the federal claims, the state tort claims are susceptible to the limitations defense, Ms. Harmon's points notwithstanding.

### State Tort Claim Requirements

The County defendants note that the state tort claims require compliance with what is commonly referred to as the California Tort Claims Act, Gov. Code, §§ 810, et. seq.

The California government claims statutes require timely filing of a proper claim as condition precedent to maintenance of an action.  Cal. Gov. Code, §§ 905, 911.2, 945.4 (presentment of a written claim to the applicable public entity is required before a "suit for money or damages may be brought against a public entity")[8]; *County of San Luis Obispo v. Ranchita Cattle Co.*, 16 Cal.App.3d 383, 390, 94 Cal.Rptr. 73 (1971).  The claims procedures applicable to actions against public employees are the same for actions against public entities.  Cal. Gov. Code, §§ 950-950.6.  Compliance with the claims statutes is mandatory. *Farrell v. County of Placer*, 23 Cal.2d 624, 630, 145 P.2d 570 (1944).  Failure to file a claim is fatal to the cause of action.  *Johnson v. City of Oakland*, 188 Cal.App.2d 181, 183, 10 Cal.Rptr. 409 (1961). "[F]ailure to allege facts demonstrating or excusing compliance with the claim presentation requirement subjects a claim against a public entity to a demurrer for failure to state a cause of action."  *State v. Superior Court,* 32 Cal.4th 1234, 13 Cal.Rptr.3d 534, 538 (2004).

The complaint fails to allege that Ms. Harmon complied with the California government claims

---

[8]     California Government Code section 911.2(a) provides: "A claim relating to a cause of action for death or for injury to person . . . shall be presented . . . not later than six months after the accrual of the cause of action.  A claim relating to any other cause of action shall be presented . . . not later than one year after the accrual of the cause of action."

1   statutes to permit her to proceed here with her state tort claims.  Such failure is fatal to her state tort

2   claims.  Ms. Harmon's opposition papers claim that the complaint's paragraph 9 alleges "that she

3   complied with the applicable claims statutes."  The complaint's paragraph 9 does not allege as much.

4   There is no direct evidence that Ms. Harmon filed a state tort claim or filed her action timely following

5   rejection of her state tort claim.  An unsubstantiated state tort claim bolsters dismissal of Ms. Harmon's

6   state tort claims.

7                                              **County's Direct Tort Liability**

8   _____The County contends that the state tort claims fail to allege a necessary statutory basis for the

9   County's direct tort liability.

10       The California Tort Claims Act, Cal. Gov. Code, §§ 810, et. seq., does not provide that a public

11   entity is liable for its own conduct or omission to the same extent as a private person or entity.  *Zelig v.*

12   *County of Los Angeles*, 27 Cal.4th 1112, 1128, 119 Cal.Rptr.2d 709, 722 (2002).   California

13   Government Code section 815(a) provides that a "public entity is not liable for an injury, whether such

14   injury arises out of an act or omission of the public entity or a public employee or any other person,"

15   "[e]xcept as otherwise provided by statute."  Certain statutes provide expressly for public entity liability

16   in circumstances that are somewhat parallel to the potential liability of private individuals and entities,

17   but the Tort Claims Act's intent "is not to expand the rights of plaintiffs in suits against governmental

18   entities, but to confine potential governmental liability to rigidly delineated circumstances." *Brown v.*

19   *Poway Unified School Dist.*, 4 Cal.4th 820, 829, 15 Cal.Rptr.2d 679 (1993).

20       A court first determines whether a statute "imposes direct liability" on a defendant public entity.

21   *Munoz v. City of Union City*, 120 Cal.App.4th 1077, 1111, 16 Cal.Rptr.3d 521, 547 (2004).  "[D]irect

22   tort liability of public entities must be based on a specific statute declaring them to be liable, or at least

23   creating some specific duty of care, and not on the general tort provisions of [California] Civil Code

24   section 1714."  *Eastburn v. Regional Fire Protection Authority*, 31 Cal.4th 1175, 1183, 80 P.3d 656

25   (2003).  "[B]ecause under the Tort Claims Act all governmental tort liability is based on statute, the

26   general rule that statutory causes of action must be pleaded with particularity is applicable."  *Lopez v.*

27   *So. Cal. Rapid Transit Dist.*, 40 Cal.3d 780, 795, 221 Cal.Rptr. 840 (1985).  Thus, "to state a cause of

28   action against a public entity, every fact material to the existence of its statutory liability must be pleaded

1   with particularity." *Peter W. v. San Francisco Unified Sch. Dist.,* 60 Cal.App.3d 814, 819,131 Cal.Rptr.

2   854 (1960).

3        The complaint fails to allege a statutory basis to pin the County for liability for negligence and

4   wrongful death.  The complaint refers to no statute which creates a specific duty for the County, and as

5   explained above, Ms. Harmon's reliance on portions of the California Elder Abuse Act are unavailing.

6   Ms. Harmon fails meaningfully to demonstrate grounds to impose liability on the County.

7         **Legal Duty – Individual Defendants**

8        Chief Deputy Coroner Hensel and Det. Ryan argue that they owed no legal duty to Ms. Harmon

9   to investigate her allegations against Ms. Centeno.

10        The elements of negligence are (a) a legal duty to use due care; (b) a breach of such legal duty;

11   and (c) the breach as the proximate or legal cause of the resulting injury.  *Ladd v. County of San Mateo*,

12   12 Cal.4th 913, 917, 50 Cal.Rptr.2d 309 (1996).  "Liability for negligent conduct may only be imposed

13   where there is a duty of care owed by the defendant to the plaintiff or to a class of which the plaintiff is

14   a member."  *J'Aire Corp. v. Gregory,* 24 Cal.3d 799, 803, 157 Cal.Rptr. 407 (1979).  A duty to the

15   plaintiff is an essential element, which "may be imposed by law, be assumed by the defendant, or exist

16   by virtue of a special relationship."  *Potter v. Firestone Tire & Rubber Co.,* 6 Cal.4th 965, 985, 25

17   Cal.Rptr.2d 550 (1993).

18        "As a rule, one has no duty to come to the aid of another. A person who has not created a peril

19   is not liable in tort merely for failure to take affirmative action to assist or protect another unless there

20   is some relationship between them which gives rise to a duty to act."  *Williams v. State of California*,

21   34 Cal.3d 18, 23, 192 Cal.Rptr. 233 (1983).  A police officer does not assume a greater obligation to

22   others individually and his/her additional duty is limited to that "owed to the public at large."  *See*

23   *Williams*, 34 Cal.3d 18, 24, n. 3, 192 Cal.Rptr. 233; *see Lugtu v. California Highway Patrol*, 26 Cal. 4th

24   703, 717, 110 Cal.Rptr.2d 528 (2001) ("law enforcement officers, like other members of the public,

25   generally do not have a legal duty to come to the aid of a person").

26        Moreover, "[a]bsent a special relationship creating a special duty, the police have no legal duty"

27   to engage in specific conduct toward a general member of the public.  *See Adams v. City of Fremont*,

28   68 Cal.App.4th 243, 279, 80 Cal.Rptr.2d 196 (1998); *see also Tarasoff v. Regents of University of*

1 | *California*, 17 Cal.3d 425, 436, 131 Cal.Rptr. 14 (1976).

2 |       The complaint lacks factual allegations that Chief Deputy Coroner Hensel or Det. Ryan owed

3 | a duty to Ms. Harmon or decedent or had a special relationship with Ms. Harmon or decedent to subject

4 | them to negligence liability.  As noted by Chief Deputy Coroner Hensel and Det. Ryan, the complaint

5 | fails to allege that anyone represented to Ms. Harmon "that they would actually investigate Decedent's

6 | alleged homicide, but failed to do so."  Ms. Harmon attempts to create a duty and in turn negligence

7 | liability were none exists.  Ms. Harmon offers nothing meaningful to support her negligence claim.

8 | Moreover, based on the complaint and Ms. Harmon's additional facts, the County defendants were first

9 | notified of alleged elder abuse after decedent passed to vitiate any claim that they could have acted to

10 | avoid compromise of decedent's health.

11 | **Wrongful Death Claim**

12 |       The County defendants fault the (fourth) wrongful death cause of action for failure to allege facts

13 | that Ms. Harmon is entitled to bring the claim as decedent's sole heir.

14 |       Under California Code of Civil Procedure section 377.60(a), a wrongful death action may be

15 | pursued by a decedent's personal representative, surviving spouse or children, or if there are no surviving

16 | issue, by a person entitled to inherit from decedent by intestate succession.  The elements of a Code of

17 | Civil Procedure section 377.60 wrongful death action are (1) a "wrongful act or neglect" on the part of

18 | one or more persons that (2) "cause[s]" (3) the "death of [another] person."  Cal. Code Civ. Proc., §

19 | 377.60; *Nogart v. Upjohn*, 21 Cal.4th 383, 390, 87 Cal.Rptr.2d 453 (1999). "A wrongful death action

20 | has a statutory rather than common law origin; the Legislature both created and limited the remedy."

21 | *Ruttenberg v. Ruttenberg*, 53 Cal.App.4th 801, 807, 62 Cal.Rptr.2d 78 (1997).

22 |       The County defendants are correct that the complaint fails to allege Ms. Harmon's standing to

23 | pursue the wrongful death claim.  Ms. Harmon's opposition papers claim that Ms. Harmon is decedent's

24 | sole heir and conservator.  Nonetheless, the wrongful death claim alleges no wrongdoing of the County

25 | defendants to cause decedent's death in that their alleged wrongdoing arose after decedent's death.  The

26 | complaint targets Ms. Centeno as the cause of decedent's death.  The wrongful death claim fails.

27 | **Intentional Infliction Of Emotional Distress Claim**

28 |       The County defendants fault the (second) intentional infliction of emotional distress cause of

21

1   action for failure to allege "extreme and outrageous" conduct to impose liability.

2      The elements of a cause of action for intentional infliction of emotional distress are: (1)

3   defendant's outrageous conduct; (2) defendant's intention to cause, or reckless disregard of the

4   probability of causing, emotional distress; (3) plaintiff's suffering severe or extreme emotional distress;

5   and (4) an actual and proximate causal link between the tortious (outrageous) conduct and the emotional

6   distress. *Nally v. Grace Community Church of the Valley*, 47 Cal.3d 278, 300, 253 Cal.Rptr. 97, 110

7   (1988), *cert. denied*, 490 U.S. 1007, 109 S.Ct. 1644 (1989); *Cole v. Fair Oaks Fire Protection Dist.*, 43

8   Cal.3d 148, 155, n. 7, 233 Cal.Rptr. 308 (1987).  The "[c]onduct to be outrageous must be so extreme

9   as to exceed all bounds of that usually tolerated in a civilized community." *Davidson v. City of*

10  *Westminister*, 32 Cal.3d 197, 209, 185 Cal.Rptr. 252 (1982) (quoting *Cervantez v. J.C. Penney Co.*, 24

11  Cal.3d 579, 593, 156 Cal.Rptr.198 (1979)).  Conduct is extreme and outrageous when it is of a nature

12  which is especially calculated to cause, and does cause, mental distress.  Liability does not extend to

13  mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. *Fisher v. San Pedro*

14  *Peninsula Hosp.*, 214 Cal.App.3d 590, 617, 262 Cal.Rptr. 842, 857 (1989).

15     To support an intentional infliction of emotional distress claim, the conduct must be more than

16  "intentional and outrageous. It must be conduct directed at the plaintiff, or occur in the presence of a

17  plaintiff of whom the defendant is aware." *Christensen v. Superior Court*, 54 Cal.3d at 903, 2

18  Cal.Rptr.2d 79 (1991).  The California Supreme Court has further explained:

19      "The law limits claims of intentional infliction of emotional distress to egregious conduct
        toward plaintiff proximately caused by defendant." . . . The only exception to this rule
20      is that recognized when the defendant is aware, but acts with reckless disregard, of the
        plaintiff and the probability that his or her conduct will cause severe emotional distress
21      to that plaintiff. . . . Where reckless disregard of the plaintiff's interests is the theory of
        recovery, the presence of the plaintiff at the time the outrageous conduct occurs is
22      recognized as the element establishing a higher degree of culpability which, in turn,
        justifies recovery of greater damages by a broader group of plaintiffs than allowed on a
23      negligent infliction of emotional distress theory. . . .

24  *Christensen*, 54 Cal.3d at 905-906, 2 Cal.Rptr.2d 79 (citations omitted.)

25     The complaint fails to allege outrageous conduct to support an intentional infliction of emotional

26  distress claim.  At best, the complaint alleges hints of nonfeasance (failure to investigate) – not conduct

27  calculated to cause emotional distress.  The (second) intentional infliction of emotional distress cause

28  of action fails in the absence of alleged facts to support elements of the claim.  Ms. Harmon offers

1   nothing to attempt to revive her intentional infliction of emotional distress claim.

2   **CONCLUSION AND ORDER**

3       As discussed above, the complaint is riddled with deficiencies which cannot be overcome by an

4   attempt at amendment.  On its face, the complaint reflects that its claims are time barred and lacks facts

5   to satisfy the limitations period.  The complaint lacks facts and related allegations to meet elements of

6   its claims.  As such, this Court DISMISSES with prejudice this action against defendants County of

7   Fresno, County of Fresno Department of Human Services, Chief Deputy Coroner Bob Hensel, Fresno

8   County Coroner's Office, and Detective Ryan Gilbert.  This Court DIRECTS the clerk to enter judgment

9   against plaintiff Betty Harmon and in favor of defendants County of Fresno, County of Fresno

10  Department of Human Services, Chief Deputy Coroner Bob Hensel, Fresno County Coroner's Office,

11  and Detective Ryan Gilbert.

12      IT IS SO ORDERED.

13  **Dated:    October 20, 2008**              **/s/ Lawrence J. O'Neill**
                                                UNITED STATES DISTRICT JUDGE
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28